270 So.2d 690

**David HAGGLER, alias**

v.

**STATE.**

**6 Div. 384.**

Court of Criminal Appeals of Alabama.

Dec. 5, 1972.

**260**

Jasper B. Roberts, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and William G. McKnight, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted in the Circuit Court of Cullman County for the offense of assault with intent to rob and his sentence was fixed at imprisonment in the penitentiary for a term of eight (8) years. He had a court-appointed lawyer to represent him in the court below. He is here with a free transcript and a court-appointed lawyer.

On March 6, 1971, at about 8:15 P.M., three employees of Brunos Grocery Store in Cullman, Danny Webb, Don Glover, and William Griffin, drove to the Parker Bank in that city to make a night deposit for the store. Griffin, the store manager, drove the automobile. Webb had possession of the locked money sack containing around twenty-five hundred dollars ($2500.00) in money and checks. He rode on the front seat next to the door on the passenger's side and Glover occupied the middle space on the front seat between Webb and Griffin. Upon arriving at the bank, Griffin drove the car upon the sidewalk near the bank's night deposit box but far enough away so that Webb's door would not hit the building when Webb opened the door to make the deposit. Webb got out of the car, dropped the money sack in the depository and, while waiting to see if the sack went down satisfactory, a man came up to him with a pistol pointed at Webb's stomach and mumbled something like "back up." At this point, the gunman was directly in front of Webb and about two feet from him. Webb testified that he had never seen the gunman before, but he wore a toboggan pulled down "just above his eyes." Lights were on in and around the bank. Webb further testified that the gunman's clothes were dark in color. At about this time another gunman approached the automobile on the driver's side with a pistol in his hand. Griffin, who still had his automobile motor running, accelerated or gunned the motor and struck the gunman with such force that he was knocked on the hood of the car and he immediately opened fire and shot three or four times toward the windshield of the car before he fell off the hood and ran from the scene. One bullet struck a windshield wiper and Griffin and Glover ducked down on the front seat and the car went out of control and struck the curb of the street. During this shooting, the gunman who first accosted Webb also fled.

Webb made a positive in-court identification of the defendant at trial. Griffin and Glover did not and could not identify appellant as the gunman who had pointed the pistol at Webb's stomach during the attempted hold up. No doubt their attention was diverted by the approach of the second gunman and the fire works which followed.

A few days later, appellant was arrested in Huntsville, Alabama, and carried to the county jail in Cullman. His picture appeared in the *Cullman Times*. Webb testified that he saw the picture in the paper prior to going to the jail to view appellant. At the sheriff's office, Webb identified appellant as the man who attempted to rob him on the night of March 6, 1971. Previously the police officers had shown Webb some "pictures", but the record is not clear whether appellant's photograph was among the "pictures" shown him. Appellant was not placed in a "line-up".

From the record:

"Q. (BY MR. JULIAN BLAND:) When you saw him in jail or down here at the jail or wherever it was, the sheriff's office, is that the first time you had seen him since you saw him on the corner up there at the bank?

"A. Yes, sir.

"Q. Did you recognize him at that time?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. (BY MR. JULIAN BLAND:) Is this the man, this man right here, that is sitting in the courtroom at this time, that was within two feet of you on that night with the gun on you after you put the money in the bank?

"A. Yes, sir, that is him.

"Q. That is him?

"A. Yes, sir."

For the defense, appellant and his witnesses proved an alibi. The tendencies of the alibi evidence showed that at the time of the occurrence, made the basis of the indictment and conviction, appellant was working at the B and B Restaurant in Huntsville; that he worked seven days a week and his hours of employment were from nine o'clock a.m. until nine-thirty or ten at night. He had been employed at this restaurant for about two months prior to March 6, 1971, the date of the attempted robbery which date was on a Saturday. According to the testimony of Mrs. Baites, co-owner of the restaurant with her husband, appellant had never missed working on a Saturday night and that he worked on March 6, 1971, until around nine-thirty or ten o'clock p.m. Mr. Baites did not testify. On cross-examination, Mrs. Baites testified that appellant worked the following day (Sunday), but she had no recollection that he worked at all during the following week; that she and her husband made out the payroll, but she could not recall appellant working after Sunday, March 7, 1971, though he worked everyday until he was arrested.

Appellant's wife corroborated this testimony. She stated she went to the restaurant on Saturday night, March 6, 1971, for a soft drink and left her husband at work about five or ten minutes after nine; that her husband arrived home that night around eleven o'clock.

Appellant testified that he was twenty-four years of age and had lived in Huntsville about eight years; that he had never been to the City of Cullman prior to the time the sheriff's deputies arrested him; that he was employed by the B and B Restaurant in Huntsville for two months prior to March 6, 1971, and worked there seven days a week; that he could not recall the last night he worked there; that he did not know Webb and had never seen him at any time prior to the preliminary hearing, and that he did not see him at the sheriff's office at any time. During cross-examina-

tion, it developed that appellant had previously been convicted and served time in the penitentiary of two cases of burglary and one of assault with intent to murder.

█ We are urged to reverse appellant's conviction because he was not attended by counsel at the time Webb saw and identified appellant at the sheriff's office nine days after the attempted robbery. This identification, of course, preceding the preliminary hearing at which appellant was bound over to the Grand Jury. He was indicted three months later. Webb *might* have been influenced when he saw appellant's picture in the paper prior to seeing him at the sheriff's office. However, his in-court identification was unequivocal and withstood an exhaustive cross-examination.

Since *Wade, Gilbert,* and *Stovall,* the Supreme Court of the United States rendered Kirby v. Illinois, 406 U.S. 682, 92 S. Ct. 1877, 32 L.Ed.2d 411, on June 7, 1972, which was followed by this Court in White v. State, 48 Ala.App. 334, 264 So.2d 565.

In *White,* supra, we said that the Supreme Court of the United States

" * * * has apparently restricted its view of the right to counsel so as to not now require the presence of counsel at confrontations for identification purposes prior to 'the initiation of judicial criminal proceedings.' It is unclear from the holding in Kirby just when a person becomes the subject of a 'criminal prosecution.'

"On that question Mr. Justice Stewart wrote as follows:

" 'The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable. . . .'

\* \* \* \* \* \*

"We pretermit at this time consideration of the question of whether counsel must be present at identification confrontations held after a person has been charged by affidavit and warrant with the specific offense in question but before indictment."

We here and now reaffirm our holding in *White* on rehearing. It is our opinion that the identification of appellant under the circumstances of this case was not a denial of due process.

Appellant presented a strong case in support of his alibi. His testimony and that of his wife and one of his employers was opposed to that of State witness Webb. In our system of jurisprudence, we do not travel on the numerical number of witnesses. Appellant simply failed to "sell" his alibi to the jury and that's that.

In Willcutt v. State, 284 Ala. 547, 226 So.2d 328, our Supreme Court said:

"We cannot say in the instant case that there was not enough evidence to allow the jury to draw the inference that the defendant was the person who committed this robbery. The defendant presented a strong case in support of his alibi. The testimony of his witnesses was in direct conflict with the testimony of the State's witness. Yet the State's witness made a positive identification of defendant as the person who robbed and burned him. The State presented substantial evidence and the jury had before it an adequate basis for drawing inferences and conclusions against the defendant. It is for the jury, not the trial court or this court, to find the facts and to determine guilt

or innocence. The State presented sufficient evidence upon which the jury could base its verdict."

 The State's case was not the strongest that has come to this Court through the years. But where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value is for the jury. Bolton v. State, 21 Ala.App. 373, 108 So. 631.

This case is due to be and is affirmed.

Affirmed.

All the Judges concur.