314 So.2d 914

**Wilmer McBRIDE**

**v.**

**STATE.**

**I Div. 421.**

Court of Criminal Appeals of Alabama.

June 17, 1975.

Fred F. Smith, Jr., and Johnny Mack Lane, Prichard, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of murder in the second degree and sentenced to ten years imprisonment in the penitentiary. He was represented at arraignment and trial by employed counsel. After conviction he was found to be indigent and he was furnished a free transcript and one of his trial lawyers was appointed to represent him on appeal. He pleaded not guilty and claimed self-defense.

The homicide grew out of a crap game on Saturday afternoon, April 7, 1973, at the home of Thomas Sayles at 329 Prosper Way Street in the City of Prichard, Mobile County, Alabama. All participants in the crap game were Negroes.

The facts leading up to and culminating in the shooting of the deceased are so confusing and conflicting that only a jury could unscramble the confusion and conflicts and arrive at the truth.

The only uncontradicted testimony is that appellant shot and killed the deceased with a .22 rifle bullet.

After the shooting appellant left the home before the police arrived. He was later arrested and given the *Miranda* rights and warnings and signed a waiver of rights form which reads as follows:

"VOLUNTARY STATEMENT

"DATE 4-8-73 PLACE Detective Division TIME STARTED 8:35 A.M.

"I, Wilmer McBride, am 35 years old. My date of birth is May 13th 1937. I live at 1713 Whistler Ave. The person to whom I give the following voluntary statement, G. C. Robinson, having identified and made himself known as a detective, DULY WARNED AND ADVISED ME, AND I KNOW:

"1. That I have the right to remain silent and not make any statement at all, nor incriminate myself in any manner whatsoever.

"2. That anything I say can and will be used against me in a court or courts of law for the offense or offenses concerning which this statement is herein made.

"3. That I can hire a lawyer of my own choice to be present and advise me before and during this statement.

"4. That if I am unable to hire a lawyer I can request and receive appointment of a lawyer by the proper authority, without cost or charge to me, to be present and advise me before and during this statement.

"5. That I can refuse to answer any questions or stop giving this statement any time I want to.

"6. That no law enforcement officer can prompt me what to say in this statement, nor write it out for me unless I choose for him to do so.

"A. No one denied me any of my rights, threatened or mistreated me, either by word or act, to force me to make known the facts in this statement. No one gave, offered or promised me anything whatsoever to make known the facts in this statement, which I give voluntarily of my own free will and accord.

"B. I do not want to talk to a lawyer before or during the time I give the following true facts, and I knowingly and purposely waive my right to the advice and presence of a lawyer before and during this statement.

"C. I certify that no attempt was made by any law enforcement officer to

prompt me what to say, nor was I refused any request that the statement be stopped, nor at anytime during this statement did I request for the presence or advice of a lawyer.

"I have read each page of this statement consisting of _8_ pages, each page of which bears my signature, and corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct.

"This statement was completed at 9:45 A.M. on the 8th day of April, 1973.

"WITNESS: Det. G. E. Robinson

WITNESS: Lt. A. G. Hildreth

"Wilmer McBride
Signature of person giving voluntary statement"

Following the execution of the above form, appellant gave the officers a statement in question and answer form covering eight (8) pages. He signed his name to each page which was witnessesed by Detective G. E. Robinson and Lieutenant A. G. Hildreth. After a lengthy voir dire examination out of the presence and hearing of the jury the trial court held the confession was voluntary. The proper predicate was laid and the confession was admitted in evidence. It would serve no useful purpose in setting out this signed confession but pertinent reference will be made thereto later in this opinion.

Back to the crap game which started shortly after noon on the day of the homicide. The gamblers were drinking beer and gin and everything seemed to be peaceful until after the deceased arrived. He entered the game and soon lost his money. He left to borrow some money from a woman and returned in fifteen to twenty minutes with a twenty-dollar bill. He put the twenty dollars on the floor and re-entered the crap game. He won a few dollars and then found his twenty-dollar bill missing. He made everyone present open their billfolds to see if anyone present had his money. Each of the players assured him they did not take his money, but they told him a man named Reed might have taken the money as he was the only person who left the house about the time the money was missing. The deceased left the house and found Reed who assured him that he did not take the money. The deceased returned with some more money and said, "let's see who takes this." The deceased was still fussing with those present about the missing money. He pulled an opened knife from his pocket and had it in his left hand and pointed his right finger in appellant's face. Those present told appellant not to say anything to him. Appellant did not get back in the game when the deceased returned to the house. After the deceased drew his knife appellant ran out of the back door and walked around to the front porch and told his wife to get their child and "let's go home." Appellant heard the screen door open and saw the deceased. He went to his car and got his rifle and walked toward the front door and while standing on the ground, he fired the rifle through the screen door hitting the deceased who turned and went to one of the bedrooms and fell on the floor where he died.

After appellant's arrest, his wife brought the rifle and a knife to Police Headquarters and turned them over to the officers.

Dr. Earl Wert, the County Coroner, performed an autopsy on the deceased and testified that death resulted from a gunshot wound in the chest associated with massive hemorrhage into the lung on each side. In conducting the autopsy he located and recovered a bullet from the body which was lodged behind the heart. He turned the bullet over to the officers in charge of the investigation.

The rifle and bullet were sent to the toxicologist in Mobile. The rifle was test-fired into a cotton box several times and the test bullets were compared with the bullet removed from the body of the deceased. After being properly qualified, the witness testified, "The test revealed, in my

opinion, that the bullet which I received was fired from the gun which I received."

Adverting to the confession appellant stated that when the deceased started to open the screen door he went to his car and got the rifle from under the front seat, returned to the front door and while in the yard he shot through the screen. He stated he did not know he had hit the deceased. He admitted he was drinking at the time. After firing the rifle one time he either laid it on the porch or put it back in the car.

It should be noted here that the shooting occurred at the home of appellant's brother-in-law. Appellant lived with his wife and six-year-old boy at 1713 Whistler Avenue in the City of Prichard.

There was no motion to exclude the state's evidence and no motion for a new trial. No exceptions were reserved to the court's oral charge. The request for the affirmative charge was refused.

The trial judge charged the jury on all four degrees of homicide and gave all of appellant's written charges, 16 in number, refusing only the affirmative ones.

In all criminal cases the jury are the judges of the facts. *Handley v. State,* 212 Ala. 347, 102 So. 628; *Nichols v. State,* 27 Ala.App. 435, 173 So. 652; *Grant v. State,* 53 Ala.App. 115, 298 So.2d 46.

We hold the evidence made and presented a jury question and there is no warrant for this court to disturb the verdict of the jury. *Grant v. State,* supra.

Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value is for the jury. *Bolton v. State,* 21 Ala.App. 373, 108 So. 631; *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.

Affirmed.

All the Judges concur.