326 So.2d 671

**Larry Hudson SWEAT**

v.

**STATE.**

**7 Div. 277.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Oct. 21, 1975.

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Asst. Atty. Gen., for the State, appellee.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant was indicted on August 22, 1972, on the charge of assaulting Willard Westcott, a peace officer of the city of Centre, Alabama, with a deadly weapon to-wit: a pistol. It is charged in the indictment that said officer at the time of the assault was engaged in the active discharge of his lawful duty. The trial court imposed a sentence of fourteen years imprisonment in the penitentiary. Judgment was entered therefor, and this appeal is from said judgment.

On October 29, 1974, this Court granted the State's motion to dismiss the appeal for failure to file the transcript within the time provided by law. On August 11, 1975, the United States District Court for the Northern District of Alabama, Middle Division, issued an order finding the appellant to be an indigent and further ordering the State of Alabama to either: (1) retry the appellant, or (2) grant him an out-of-time appeal, or (3) release him from custody.

Myron K. Allenstein, Gadsden, for appellant.

This Court on August 18, 1975, upon motion of the Attorney General, withdrew its original opinion (326 So.2d 671) dismissing the appeal, set aside such dismissal and restored the appeal to the docket, not as an out-of-time appeal, but because the original dismissal of the appeal was ordered without this Court being informed that the appellant was indigent. Upon such being made known to this Court, and being in term time, we restored the appeal to the docket. We now consider the appeal upon its merits.

It appears from the evidence that the defendant and two other men had on the night of May 10, 1972, between 9:00 or 9:30 p. m., or thereabouts, burglarized Proctor Ford, where motor vehicles were sold and repaired.

The assaulted officer, Willard Westcott, and Officer Green, an auxillary police officer on regular duty at the time as a substitute for an absent police officer, were alerted to the entry by a motorist, Billy W. King, who happened to be passing and observed someone in the building.

The two officers, Sgt. Westcott and Green, went immediately to the Proctor Ford building. They got out of the automobile that took them to the scene. They separated, one officer going to one side of the building and the other officer on the other side, to make an inspection.

Green testified that after he got to the back of the building, he heard Sgt. Westcott holler, "Halt." Then he heard a couple of shots at which time he ran to a large window in the building and did not see anything there. He then heard a couple of more shots, at which time he ran over to a little window in the door of the building. He looked in this window and saw three men in the building, one of whom was the defendant, Larry Hudson Sweat. He, Sweat, had an automatic pistol in his hand that he was pointing towards a window which was broken out. He, Sweat, whirled around and ran back towards the other side of the building towards the witness. The witness was about twelve steps from Sweat. He also saw a person, later identified to him as James Thomas, whom he arrested at that time.

After the arrest, the witness then called the police station on his car radio and then went around to where Sgt. Westcott was.

On cross examination, the witness testified that immediately after he heard Officer Westcott holler, "Halt," he heard two or three shots, after which there was a slight pause, then heard two or three more shots. All the shots, he testified, did not have the same sound. The last was louder than the others.

Officer Westcott had a .38 caliber pistol. He was shot with a .25 caliber. A .38 caliber makes a louder report. The witness further stated that the three men he saw in the building were facing the other direction and one had on a hat. He did not see any sort of flash from inside or outside the building. The inside of the building was lighted with lights and was just like daylight. He also testified he never saw any shots fired by anybody; that it was an automatic Sweat had; and that he never found this gun.

Deputy Sheriff Aker, called by the State, testified that about 9:30 p. m. on the night of May 10, 1972, he searched the building and found three freshly spent shells from a .25 automatic pistol. He also found a piece of lead that was fired apparently from another gun, Willard Westcott's, that went into the trunk of a car that was sitting at the wash rack. The spent cartridges were in the wash rack inside the building at the window where Officer Westcott was shot.

Dr. John Adams, admittedly a competent physician, testified about the bullet wounds on the person of Sgt. Westcott. He stated that he extracted a .25 caliber bullet from Officer Westcott's body and that the pa-

tient was referred to a Gadsden physician for treatment. He further testified that the patient stated that he had been shot.

There is a total absence of evidence as to who, if any, of the three men in the building, fired the pistol containing the spent cartridges. There is no testimony that the automatic pistol, which Officer Green testified he saw in the hand of the defendant, was a .25 caliber automatic. It appears further that Officer Green did not see the pistol fired, nor did he see any blaze therefrom. For aught appearing, either one of the three burglars could have fired the pistol that expelled the three spent cartridges.

Under the adduced evidence and the lack of evidence, the jury was left to rely on conjecture and suspicion as to the guilty person who wounded Officer Westcott with the bullet extracted from his body.

Under the circumstances, we are constrained to reverse the judgment of guilt entered against the defendant. The trial court erred in refusing defendant's written request for the affirmative charge. The judgment is reversed and the cause is remanded for a new trial.

The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Reversed and remanded.

CATES, P. J., and TYSON, HARRIS and BOOKOUT, JJ., concur.

DeCARLO, J., dissents.

DeCARLO, Judge (dissenting).

It is my view there was sufficient evidence presented to sustain the jury's finding of guilt.

The relevant facts indicating appellant shot Officer Westcott were: After Officer Green heard Officer Westcott shout "Halt", he heard two or three shots and after a pause two or three more shots. The last shots were louder than the first. At that point Green ran to a small window and saw three men standing in the building. One of the men was appellant, who had an automatic pistol pointed in the direction of a broken window.

Later Officer Westcott was found lying right in front of some windows on his back. One of the windows was broken.

Inside the building three spent .25 caliber shells were found in a washrack at the broken window.

The attending physician extracted from Officer Westcott's back a .25 caliber bullet.

Although no one actually saw the appellant fire the pistol in his hand, the jury could reasonably infer from the facts shown that Sweat shot Officer Westcott.

This conclusion is supported by *Haggler v. State*, 49 Ala.App. 259, 270 So.2d 690, where the court reasoned:

". . . [W]here there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value is for the jury."

Further it is apparent that one of the three had to shoot the officer. No others were seen or found in the building and the only one of the three seen with a gun was the appellant.

Additionally, under these circumstances all could be guilty even though only one pulled the trigger.

"Conspiracy, or a common purpose to do an unlawful act, need not be shown by positive testimony. Nor need it be shown that there was pre-arrangement to do the specific wrong complained of.

When two or more persons enter upon an unlawful enterprise with a common purpose to aid, assist, advise, encourage each other in whatever may grow out of the enterprise upon which they enter, each is responsible civilly and criminally for everything which may consequently and proximately result from such unlawful purpose, whether specifically contemplated or not, and whether actually perpetrated by all or less than all of the conspirators. And it is not necessary to this equal accountability that positive proof be made of the unlawful common purpose with which the enterprise was entered upon. It may be inferred from the conduct of the participants. 'All those who assemble themselves together, with an intent to commit a wrongful act, the execution whereof makes probable, in the nature of things, a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime . . .' " *Martin v. State,* 89 Ala. 115, 8 So. 23.

The obvious common purpose of the three was the burglary of the Proctor Ford Building and inherent in this design was their desire to escape apprehension. When one of their members started shooting, the existence of the common intent to resist arrest by violence was apparent and reasonably inferable.

At that point the common purpose became the escape.

In my judgment this case should be affirmed and based on the foregoing, I respectfully dissent.