HARRIS, Judge.
Appellant was convicted of burglary in the second degree and the Court sentenced him to ten years in the penitentiary. At arraignment and trial appellant was represented by retained counsel. He pleaded not guilty. Appellant was 19 years of age at the time of his trial and made application to be treated as a Youthful Offender. His application was referred to a Probation Officer for investigation. When the Probation Officer filed his report, the Court denied appellant’s application for Youthful Offender Status. After sentence was imposed, notice of appeal was given. His retained counsel withdrew from the case. The Court determined appellant to be indigent and he was furnished with a free transcript. New counsel was appointed to represent him on appeal.
When the State rested, appellant made a motion to exclude the State’s evidence on the ground the corpus delicti had not been proved and on the further ground that the testimony of the accomplice had not been sufficiently corroborated. The trial court denied the motion.
The State was forced to rely upon circumstantial evidence and the testimony of an accomplice to gain a conviction in this ease. Appellant did not testify, nor did he offer any evidence in his behalf.
James L. Kelly testified that in October, 1975, he was employed by Courtesy Ford Sales, Incorporated, a corporation, located at the intersection of Bell and Holt Streets in the City and County of Montgomery, Alabama. He stated that he arrived for work at 8:30 o’clock on the morning of October 10,1975, and noticed that the building had been broken into and all the keys had been taken from inside the building and that four cars were missing from the parking lot of the company. He said the keys were kept on a board that was about two feet by two feet inside the building and that the board was missing along with the *1110 keys. He identified the missing automobiles as a 1973 Buick Electra which was triple black; a 1969 Oldsmobile Cutlass Supreme which was a goldish yellow with a beige gold vinyl top; a 1972 Monte Carlo which was silver gray with a dark black vinyl top; and a 1970 Buick Riviera which was cream beige colored with a dark brown vinyl top.
Mr. Kelly further testified that he had not given anyone permission to use these cars. That when he closed and locked the building on the evening of October 9, 1975, the above described cars were parked on the lot and the keys to these cars were on the key board inside the building. Upon discovering the burglary he called the Montgomery Police Department and Officer Hamilton responded to the call. He said he was present when Officer Hamilton took custody of the broken glass from the door of the company through which the burglars had gained entrance. He identified State’s Exhibit No. 1 as the glass from the broken door of the company.
Mr. Kelly further testified on the morning he notified the police of the theft of the automobiles the 1970 Buick Riviera was found in the area of Dannelly Field around a place known as the Twin Gates community. This car had been fully stripped down and the tires and other parts were gone but he could and did identify it as one of the four stolen cars from Courtesy Ford. The following day Mr. Kelly identified the 1973 Buick Electra and the 1969 Oldsmobile Cutlass at the City storage lot. Eventually, all four stolen automobiles were recovered.
D. D.Conway testified that he lived at 2669 Drake Street and knew appellant. He stated that on the morning of October 10, 1975, he observed two automobiles already parked in front of his residence and that about fifteen minutes later a third car arrived. Conway identified one car as being a 1968 Cutlass which was an off-red or rust color. The second car was a Monte Carlo with a silver color and a black top, and the third car was a 1972 Buick, solid black, Electra 225. This witness further stated that the first two cars were parked in front of his residence and then the third car came around the curve in front of his house and pulled up in front of appellant’s house and backed into his yard. Conway said that he observed three young men at those cars but could not positively identify appellant as being one of the young men present. He stated that all of the men appeared to be dressed in wigs and they appeared to be women to him.
On redirect examination Conway stated that he could identify one of the young black men as Kenneth Starks and he said Starks was dressed like a woman the day he saw him standing with the other two individuals and three automobiles outside his home.
Bob Frank Knight testified that he lived at 2626 Drake Street and that appellant lived in the same house. He said he had known appellant about a year. He stated he was at home on the morning of October 10, 1975, and was up at 5:30. He did not see appellant when he arose at 5:30 that morning but did see him at about 7:00 a. m., getting out of a big black car on the driver’s side and open the trunk of the car. That the other two men were standing a couple of feet from appellant. He said he did not know the make of the car but it was a late model black car. He observed two other men with appellant whom he identified as Kenneth Starks and someone he knew only as Samantha.
Kenneth Starks testified that he knew appellant and Samantha Clemmons and that on the morning of October 10, 1975, they were at appellant’s house and they had three automobiles that they had gotten from Courtesy Ford that same date. Starks further stated that appellant broke a window out with a board and entered the Courtesy Ford place on Bell Street and got the keys and gave him a key, Samantha a key, and he kept the other keys. He stated they first got a Riviera and drove it around the corner and parked it. They then went back to the Courtesy Ford car lot to get more cars. He said appellant had a key to the Buick, Samantha had a key to the Monte Carlo and he had the key to the *1111 Cutlass. He stated that appellant drove the black Buick Electra. That they drove the automobiles around and all finally went to appellant’s house and all three of them stood around appellant’s house with the three stolen automobiles. He stated that before they got to appellant’s house, they saw a man whom he knew as “Cheek Cheek” and appellant gave him the keys to the Riviera and “Cheek Cheek” took the Riviera.
Starks was shown State’s Exhibit No. 1 and identified it as glass that came from Courtesy Ford when appellant broke the glass door with a board.
Officer C. W. Hamilton testified that he went to the Courtesy Ford place on Bell Street on the morning of October 10, 1975, to conduct an investigation of the burglary. He found the glass front door broken and picked up the glass that was identified as State’s Exhibit No. 1. In the course of his investigation he learned that four automobiles were stolen. He said that the four cars were recovered and he was present when they recovered the 1973 Buick and the 1972 Monte Carlo. That the Buick Riviera and the Cutlass Oldsmobile were recovered by other officers. Officer Hamilton took a signed statement from Kenneth Starks and he was turned over to the juvenile authorities as he was only 16 years of age. He got probation growing out of the Courtesy Ford burglary.
The State was compelled to rely on circumstantial evidence to hinge a conviction on appellant. This is not the strongest circumstantial evidence case that has reached this Court. As a matter of fact it is a very weak case.
Under the statute requiring corroboration of the testimony of accomplices to authorize conviction of a felony (Title 15, Section 307, Code of Alabama 1940), the corroborative evidence need not be strong, nor sufficient of itself to support the conviction, the criterion being that it legitimately tends to connect the accused with the offense. Moore v. State, 30 Ala.App. 304, 5 So.2d 644; Goodman v. State, 52 Ala.App. 265, 291 So.2d 358; Cunningham v. State, 54 Ala.App. 656, 312 So.2d 62.
Nor need such corroborative evidence directly confirm any particular fact stated by the accomplice. Skumro v. State, 234 Ala. 4, 170 So. 776; Cameron v. State, 49 Ala.App. 482, 273 So.2d 242.
“Any circumstantial evidence is sufficient to corroborate if it proves that the accused was connected with the criminal act, or tends to connect him with the commission thereof, or if such connection may reasonably or clearly be inferred from the corroborative evidence; and where the accomplice is strongly corroborated by facts and circumstances connecting accused with the crime, a conviction will be sustained.” 23 C.J.S. Criminal Law § 812(3), p. 109.
The breaking and entering, the theft of the keys, and the theft of four automobiles from the lot of Courtesy Ford was one continuous transaction or one continuous occurrence and everything that was done was admissible as of the res gestae. The rule is that if several crimes in fact constitute one criminal transaction, evidence of all such crimes may be given as part of the res gestae of the offense with which the defendant is charged. Parsons v. State, 251 Ala. 467, 38 So.2d 209; Jackson v. State, 229 Ala. 48, 155 So. 581.
Two independent witnesses saw three of the stolen automobiles at appellant’s house within hours after the burglary of Courtesy Ford. Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict of the jury. Whether there is such evidence is a question of law, its weight and probative value are for the jury. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Bass v. State, 55 Ala.App. 88, 313 So.2d 208; Washington v. State, 55 Ala.App. 116, 313 So.2d 544.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur, except CATES, J., who concurs in the result.