TYSON, Presiding Judge.
The indictment charged Wade Kelly McCalpin with the robbery of $186.00, “the property of Shop-Rite Grocery, from the *228 person of Pat Moore or in her presence, and against her will, by violence to her person, or by putting her in such fear as unwillingly to part with the same.” The jury found the appellant guilty of robbery and fixed punishment at ten years imprisonment. The trial court entered judgment in accordance with this verdict and subsequently overruled the appellant’s motion for new trial which challenged the weight and sufficiency of the evidence following a hearing.
On Sunday, May 9, 1976, Patricia Moore was the manager and cashier of the Shop-Rite Grocery located on Highway 43 in Franklin County, Alabama. Mrs. Moore testified that she came to work about 7:00 that morning, and between 10:00 and 11:00 o’clock the appellant entered the store and pointed a pistol at her from about two feet away. He demanded the proceeds from the cash register. She stated that shortly before the appellant walked in, a customer, Miss Beverly Harmon, had entered the store and asked to use the telephone. She was dialing the number as the appellant approached the counter where she was standing. She stated that McCalpin ordered Beverly Harmon to hang up the telephone, pointed the gun at her head, took the cash bills from the cash register, and left the store. She stated that as the appellant was leaving, she pushed a holdup button which set off an alarm at police headquarters. She said that she and Miss Harmon walked to the windows of the store and looked out. She stated that they saw the appellant drive off in a “light green car with a dark green top, that it had a Colbert County tag, No. 20-22973.” She stated that her call was answered by Russellville police officers, Mike Gaba and Aubrey Teas, who arrived between five and ten minutes after the alarm was sent in. She testified that they told the officers that the appellant was dressed in a dark blue shirt with blue jeans and was wearing a leather string type necklace, which had an object like a butterfly hanging from it that was silver in color. She stated that she told them the appellant had left driving south on Highway 43. She stated that she examined the cash register and determined that the appellant had taken $186.00 in fives, tens, and ones, which were the property of Shop-Rite Grocery.
Mrs. Moore indicated that later that day, between one and a half and two hours, she was called to the Franklin County Jail and there viewed a lineup. She stated that without anyone making any comment to her she immediately pointed out the appellant from the three persons standing in the lineup. Mrs. Moore made a positive incourt identification of the appellant.
On cross-examination Mrs. Moore testified that one Hubert Nesbitt was the owner of the Shop-Rite Grocery. She also testified that the appellant had been coming in the store almost daily over a two-week period just prior to May 9, 1976. Mrs. Moore also stated that the holdup took place “just prior to church time,” and that the boy, Chris, who was handling the gasoline pumps came inside after he saw a car driving off hurriedly.
Miss Beverly Harmon testified that between 10:00 and 10:30 on the morning of May 9, 1976, she pulled in front of the Shop-Rite Grocery store on Highway 43 near Russellville. She stated that the appellant, whom she positively identified in court, was inside the store. She stated that she asked to use the telephone which was near the cash register. From the record (R. pp. 93-94):
“Q. What did you do, if anything, when you got to the phone Miss Harmon?
“A. I started dialing the phone.
“Q. What happened then?
“A. Pat was standing there and he was over here and I hadn’t noticed him. I was here, I was paying attention to the phone and in a few minutes, I was dialing the phone and he pointed the gun at me and he told me to hang the phone up, so I hung the phone up. I don’t know if he thought I was calling the police or what. I didn’t know he was over there doing that, but when I looked up, he had pointed the gun at me and told me to hang the phone up.
“Q. Were you facing the defendant, when he told you to hang the phone up?
*229 “A. Yes sir, I looked at him and the gun was pointing at me.
“Q. Where was Pat, at that time, in relation to where you were?
“A. She was right here at the cash register.
“Q. Did you hang the phone up?
“A. Yes, sir.
“Q. What happened then, after you hung the phone up?
“A. She gave him the money and he left.
“Q. Did you hear the defendant say anything about the money?
“A. No, he was talking to her and I was over here dialing the phone and he told me to hang the phone up. I don’t remember him saying anything to her.
“Q. Did you see Pat get the money out of the cash register?
“A. Yes, sir.
“Q. What did you see her do with the money?
“A. Give it to him.
“Q. And did you actually see the defendant take the money?
“A. Yes, he got the money.”
Miss Harmon testified that it was a big black gun which the appellant held and pointed at her. She stated that after the appellant ran out of the store, she and Mrs. Moore ran to the windows and saw the appellant get in a green automobile with a Colbert County tag. She stated that she wrote the tag number down on paper, and that she got a good look at the car. She stated that within ten or fifteen minutes, two Russellville police officers came, that she gave them the tag number and description of the car, and also described the appellant, that she remembered the unusual necklace he was wearing around his neck over a dark shirt.
Miss Harmon testified that about an hour later she went to the Russellville Jail and there, without anyone saying anything, immediately picked out the appellant from a lineup of three men, and that he was wearing a dark shirt and blue jeans and had on a necklace. Miss Harmon made a positive incourt identification of the appellant.
On cross-examination Miss Harmon was asked if she knew that the gun was a toy pistol, and she stated, “No, I thought it was a real gun.”
Russellville Police Officer Mike Gaba testified that on May 9, 1976, he and Sergeant Aubrey Teas answered a radio dispatch to go to the Shop-Rite Grocery on Highway 43 north. He stated that within less than five minutes of receiving the dispatch they drove up and went in the store, that they were given a description of the man who came in and pointed a pistol at the two women and took the proceeds from the cash register. He said that each of the women gave him the tag number of the car, a description of it, and a description of the man who robbed the store. Officer Gaba stated that he immediately put this information on the police radio and asked them to put out an all-points bulletin. He said that within less than thirty minutes, as he was driving toward the intersection of Highways 24 and 43, he saw a green automobile pulled over with Russellville Police Captain Wood talking with a subject. He stated that he and Sergeant Teas stopped and got out of the car as they noticed that the vehicle was a “dark green over light green Buick” and had a Colbert County tag number which matched the number given by Mrs. Moore and Miss Harmon. He stated that the description of the appellant matched that given by the two women, and that he then opened the glove compartment of the appellant’s car and found $186.00. He said that Sergeant Teas took the appellant’s car keys and opened the trunk, that they found a large toy pistol in the trunk. He stated that the appellant was wearing two necklaces, one being a leather, and the other with a large silver like butterfly hanging on it, that appellant was dressed in a dark shirt with blue jeans. He stated that the tag was a Colbert County tag, No. 20-22973, the same as given him at the grocery store by Mrs. Moore. Officer Gaba testified that the pistol was a large toy *230 pistol which would not fire, and that they found no other weapons in the appellant’s vehicle. He stated that prior to making a search, or asking the appellant any questions, he was read his rights from a “Miranda card” and that the appellant stated he understood his rights.
Russellville Police Captain Thomas C. Wood testified that on the morning of May 9, 1976, he was working the day shift from 7:00 in the morning until 3:00 in the afternoon. He stated that he received a dispatch over his police radio that there had been trouble at the Shop-Rite Grocery store and that a short time later a description of the suspect and the vehicle he was driving was given by Police Officer Gaba and Sergeant Teas. He stated that he drove to the intersection on Highway 43 and stopped where he could see traffic coming down Highway 43. He noticed a Buick car with a dark green vinyl top and a light green body turn to go west on Highway 24. He stated that he gave pursuit and stopped the vehicle as it turned off on Highway 24. He stated the tag number matched the number given on the police radio alert, and that he was standing talking with the appellant when Officers Teas and Gaba drove up. He testified the appellant was then arrested after Officer Teas gave him a “Miranda warning,” and then opened the glove compartment and found $186.00. He stated that a “large toy pistol” was found in the trunk of the car.
Patricia McCalpin took the stand and testified that she had been married to the appellant for approximately three weeks at the time of the trial. She stated that during the two-week period prior to May 9, 1976, Wade Kelly McCalpin was living and working in Columbus, Mississippi, and that was where she had met him.
I
The appellant filed a demurrer to the indictment which challenged its legal sufficiency, pointing out that the ownership of the property was the Shop-Rite Grocery, and the indictment charged that Pat Moore was the party in possession, and therefore there was a fatal variance.
In Mays v. State (Ala.Cr.App.), 335 So.2d 246, we find the following:
“. . .To sustain a charge of robbery it is not necessary that the stolen property be in the actual physical contact with the person of the victim, but it is sufficient if the property is taken from his presence or personal protection. Cobern v. State, 273 Ala. 547, 142 So.2d 869. Moreover, in an indictment for robbery, ownership of the stolen property is properly laid in the party in possession, either as owner, or bailee, or agent. See Bray v. State, 47 Ala.App. 308, 253 So.2d 531, and authorities therein cited.
“It is not necessary that title be in the person robbed. Douglass v. State, 21 Ala.App. 289, 107 So. 791. Bowman v. State, 44 Ala.App. 331, 208 So.2d 241.”
II
The appellant moved to exclude the evidence at the close of the State’s case, and also filed a motion for a new trial, challenging the weight and sufficiency of the evidence, averring that the State failed to present a prima facie case.
In Tarver v. State, 53 Ala.App. 661, 303 So.2d 161, Judge Harris stated the following:
“The three essential elements of the crime of robbery are: (a) felonious intent, (b) force, or putting in fear as a means of effecting the intent, and (c) by that means of taking and carrying away of the property of another from his person or in his presence, all of these elements concurring in point of time. Douglass v. State, 21 Ala.App. 289, 107 So. 791; Hardis v. State, 28 Ala.App. 524, 189 So. 216; Cobern v. State, 273 Ala. 547, 142 So.2d 869; Floyd v. State, 52 Ala.App. 291, 291 So.2d 382.”
We are of the opinion that the State here presented a prima facie case and the appellant’s motions were properly overruled at trial. Clay v. State, 52 Ala.App. 272, 291 So.2d 364; Tarver v. State, supra.
*231 hi
The appellant moved to suppress the testimony at trial pertaining to the lineup identification by Mrs. Moore and Miss Harmon of the appellant because their testimony showed that no counsel was present at this time.
Under Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, the trial court properly overruled the appellant’s motion to suppress, challenging the lineup identification. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Havard v. State, 50 Ala.App. 147, 277 So.2d 421.
We have carefully examined this record and find same to be free from error. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.