CLARK, Retired Circuit Judge.
Appellant was convicted of robbery and sentenced to imprisonment for ten years.
The major insistence on appeal is that there was no evidence in the case tending to connect the defendant with the commission of the crime other than the testimony of two accomplices. Appellant relies upon Code of Alabama 1975, § 12-21-222, as follows:
“A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
*271 The victim of the robbery, Elizabeth Watson, seventy-seven years of age, and her sister, Margaret Matson, eighty-three years of age, were walking on the sidewalk of Princeton Avenue in West End, Birmingham, Alabama, about 12:15 P.M. on March 8, 1978, when Mrs. Watson was robbed of her purse containing about thirty-five dollars. A man whispered in her ear, “I have got a gun. Give me your pocketbook, or I will shoot you.” He jerked the purse off her arm and jerked the handle off one side of the purse. After obtaining the purse of each of the elderly ladies, he fled from the scene.
Mrs. Matson was unable to identify the robber. On the question of his identity, Mrs. Watson was interrogated carefully by the State on direct examination, by defendant on cross-examination, and by the court. We endeavor to include hereinafter the substance of her testimony on the matter of identity.
When the question was first asked Mrs.Watson on direct .examination as to the identity of defendant, defendant objected, and the court at the request of defendant excused the jury and permitted voir dire of the witness by defendant’s counsel. In reply to his questions, she said that she did not attend any lineup, that she had not been shown any photographs and that she had not seen defendant between the time of the robbery and the time of the trial. During the interrogation of the witness out of the presence of the jury, she said in response to questions asked her by defendant’s counsel:
“Q And, if I understood you earlier, you testified that when the man came up behind you and he had whispered in your ear, I believe his statement was that he said, T have got a gun. Give me your pocketbook, or I will shoot you.’ And, you said, in response to Mr. Mahon’s question, T couldn’t see and I couldn’t turn.’ You did not see this person who assaulted you, other than the fact that there was a person there, did you?
“A Well, he was there, but when he first spoke to me, you know, he was right behind me, and I turned like that (indicating) and I looked at him right square in his face, but his eyes were real golden, kinda like, and I don’t — I just don’t remember. I didn’t seem him well enough, really, to say who it was at that time, but—
“THE COURT: Well, when is it that you saw the man?
“Do you recognize this man (indicating) as the man?
“A Stand up, please.
“(Thereupon, the defendant stood on his feet, and the following proceedings were had and done:)
“THE WITNESS: Yes, I think that’s the man. He had his hair fixed a little different, and I think that is the one.
“THE COURT: Did you see the man out there at that time?
“You see, you say that you looked at him right square in the eye, and then you turn around and say, T didn’t see him well.’ “Do you see what I am talking about? “I don’t know how to take what you are saying. I don’t know whether you saw him and recognized him now, or not, you see.
“THE WITNESS: Well, I saw him when I turned around and looked at him.
“THE COURT: Did you get a good look at him?
“A In the face, yes, but I couldn’t tell—
“THE COURT: Well, now, here is where you lose me.
“You got a good look at him and what? “You got a good look at him and you don’t know that that is him is that what you are saying?
“A No. I think that is the man.[1]
“THE COURT: You think?
“A That is the man.
“THE COURT: Ma’am?
“A That is the man.
“THE COURT: That is the man?
“A Yes.
“THE COURT: You all go ahead and examine her.”
*272 Thereupon counsel for defendant presumed his interrogation of the witness out of the presence of the jury, which was concluded as follows:
“Q Now, Mrs. Watson, this is very important:
“You said from the stand a few moments ago in answer to the court, T think that’s him,’ and, then, after the judge questioned you, you said, ‘Yes, that’s him.’
“Are you absolutely positive of your identification?
“A Yes.
“MR. HULTQUIST: Thank you.
“THE COURT: All right. Is there anything else?
“MR. HULTQUIST: No, sir, except that we would like to renew our motion [a motion to suppress the testimony of the witness as to the identity of defendant].
“THE COURT: Overruled. All right, let’s put the jury in the box.”
Upon resumption of the testimony of Mrs. Watson in the presence of the jury, she testified in answer to questions asked her by counsel for the State:
“Q Mrs. Watson, I was about to ask you if the man who knocked you down and threatened you and took your purse was in the courtroom here today.
“A Yes, sir.
“Q Would you point him out?
“A Right over there (indicating).
“MR. MAHON: Let the record reflect that the witness identified the defendant, Ronnie Floyd.”
Notwithstanding the shortness of time the victim observed the man who robbed her and the fact that she had never seen him before and had not seen him again until the trial, it cannot be said as a matter of law that there was no substantial testimony by her that defendant was the man. The question of the reliability vel non of her identification of defendant is one in which a good argument can be made on either side of the question. The answer was one for the jury.
We do not agree with appellant’s contention that the court acted improperly in its interrogation of the witness as to her identification of defendant as the robber. It is obvious that the court was acting impartially in the interest of clarification and a correct determination of the matter at hand.
We can readily see that some may view the testimony of the victim and her identification of defendant as the robber as weak; on the other hand, others would view it as strong. But weak or strong, it meets the test of the sufficiency of evidence to corroborate the testimony of an accomplice. It is not necessary that such evidence be strong, or sufficient of itself to support a conviction. It is sufficient if it legitimately tends to connect the accused with the crime. Kelsoe v. State, Ala.Cr.App., 356 So.2d 735 (1978); Ward v. State, Ala.Cr.App., 356 So.2d 238, cert. denied, 356 So.2d 242 (1978); Currington v. State, Ala.Cr.App., 342 So.2d 390, cert. denied, 342 So.2d 393 (1976); Bibb v. State, Ala.Cr.App., 339 So.2d 1108 (1976); Jones v. State, Ala.Cr.App., 337 So.2d 116.
The conclusion hereinabove reached makes it unnecessary for us to determine the strongly contested issue between appellant and appellee as to whether the two witnesses claimed by appellant to be accomplices were actually accomplices.
We have searched the record for error prejudicial to appellant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

. See Little v. State, Ala.Cr.App., 357 So.2d 379 (1978) and cases cited.