264 So.2d 565

**Jerry WHITE**

v.

**STATE.**

**7 Div. 42.**

Court of Criminal Appeals of Alabama.

May 23, 1972.

On Rehearing June 30, 1972.

James S. Hubbard, Anniston, for appellant.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

ALMON, Judge.

Jerry White was indicted by a Calhoun County Grand Jury for murder in the first degree. He was found guilty by a jury of murder in the second degree and punishment was fixed at fifty years in the penitentiary.

The deceased Jeff Dorman and his wife Betty Dorman operated a cafe on West 15th Street in Anniston. At approximately twelve midnight on Saturday, September 28, 1968, two armed men with stockings over their heads entered the cafe and declared that this is a "stick-up." They ordered Mr. and Mrs. Dorman and their five employees into the kitchen area of the cafe and instructed them to lie down. The evidence is somewhat confusing at this point, however it tended to show that most complied with the robbers' requests. Apparently Mr. Dorman resisted and a struggle ensued which resulted in his being fatally shot.

A line-up was conducted by police officers in the Anniston City Jail on Monday, September 30, which resulted in four eye-witness identifications. The appellant and James Caver were identified as the guilty parties.

Prior to trial appellant's counsel filed a motion to suppress the eye-witness identification evidence as being a product of a line-up conducted in the absence of counsel. This motion was denied by the trial judge after hearing arguments. At trial defense counsel seasonably objected to the four in-court identifications. Thus this appeal involves questions under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

Police Detective Jim Meads testified that there were six persons in the line-up including James Caver and the appellant.

They were James A. Baker, age 27, weight 159 pounds; Kenneth Prothro, age 16, weight 150 pounds; Lement Turner, age 37, weight 165 pounds; and Roosevelt Hall, age 41, weight 172 pounds. There is no testimony in the record as to the age or weight of the appellant. It is inferable from a reading of the record that appellant is a young man because several witnesses referred to him as such and there was some mention of his being in high school. Detective Meads testified the lineup was conducted in two rooms. The suspects were lined up side by side on a stage in one room and the witnesses were brought into another room one at a time to view the suspects through a one-way glass window. Each of the suspects was required to utter the phrases, "Shut up, woman; I'll kill you and old Jeff anyway," and, "Lay down there woman; or do you want me to help."

Prior to the line-up appellant was being held on a charge of "vagrancy" and was not then charged with the offense in question.

Mrs. Dorman was one of the four eyewitnesses to the robbery-murder. She identified the appellant at trial over objection. She testified that an armed man entered the cafe around midnight with a stocking over his head; that she ran out the back door and this man followed her and made her come back into the cafe. When she returned, another armed man also with a stocking over his head was in the cafe. She stated that they were made to get down on the floor; that her husband was still standing; and that he began "scuffling" with the two men and several shots were fired. At this point Mrs. Dorman ran out of the cafe again to a neighbor's house. When she returned her husband was dead.

At the request of the police Mrs. Dorman was asked to view a number of photographs of suspects to see if she could identify any of them as the robbers. The record does not reflect the number of pictures shown her; however the other witnesses were shown approximately forty or fifty photographs. She described the number as a "great many." She was unable to make an identification from the pictures. She testified that she did not know appellant prior to the incident. At the line-up she identified the appellant and James Caver. She testified that she had previously seen all the other suspects in the line-up, except the two she identified.

Jeffrey Erwin, age 16, one of the employees at the cafe also identified the appellant at the trial. He was shown forty or fifty photographs of suspects before the line-up. He selected appellant's photograph from the others but was not absolutely positive of the identification. He testified that he became positive of the identification after viewing appellant at the line-up and hearing his voice and that appellant and James Caver had been in the cafe one night during the week preceding the incident. He further testified that appellant had tinted glasses on under the stocking at the time of the robbery.

Willie Johnson, age 16, another employee at the cafe, identified appellant at trial. He testified that he identified appellant and James Caver from about fifty photographs on Monday at school; that he also identified them at the line-up; that he identified them by their voices and by their build; that he had seen the appellant on one occasion prior to the shooting and had talked with him; and that appellant had a northern accent.

Elton Ray Pilot testified that he could not identify either of the robbers because as soon as they came into the cafe he left. He stated that Willie Johnson ran out of the cafe before he did.

Thomas Wynn, another employee at the cafe who was present when the robbery occurred, identified appellant at trial. He testified that the incident lasted about ten minutes; that he had known appellant for a short time; that he had identified the appellant and James Caver from forty or

forty-five photographs shown to him by police. Wynn testified on cross-examination however that he could not identify appellant the night of the incident and was not sure until he viewed the line-up.

It is now well settled that the holdings in *Wade* and *Gilbert*, supra, require the exclusion of in-court identifications which are the product of a line-up conducted in the absence of counsel unless it is established by clear and convincing evidence that the in-court identifications are based upon observations of the suspect other than those at the line-up.

The test to be applied in making this determination is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441:

"[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

It is significant that none of the witnesses identified the appellant as one of the robbers before they viewed him at the line-up. Moreover, of the three witnesses who had seen appellant prior to the night of the crime, two of them, Erwin and Wynn, testified that they were not sure that appellant was one of the robbers until they had heard his voice and viewed him at the line-up. Johnson, the third witness who had previously seen the appellant testified that his identification was largely a voice identification.

After careful consideration of the testimony of each of the four witnesses the conclusion is inescapable that the in-court identifications were either dependent upon or enhanced by observations made at the line-up conducted in the absence of counsel. The only possible exception to this would be the identification by Willie Johnson.

We cannot therefore say that the admission of these in-court identifications was harmless error beyond a reasonable doubt. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

For this reason the judgment appealed from is due to be reversed and the cause remanded.

Reversed and remanded.

All the Judges concur.

## ON REHEARING.

ALMON, Judge.

Since original deliverance of this cause the United States Supreme Court in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, decided June 7, 1972, has apparently restricted its view of the right to counsel so as to not now require the presence of counsel at confrontations for identification purposes prior to "the initiation of judicial criminal proceedings." It is unclear from the holding in Kirby just when a person becomes the subject of a "criminal prosecution."

On that question Mr. Justice Stewart wrote as follows:

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. . . ."

It should be pointed out however that the portion of the opinion from *Kirby* above quoted was not concurred in by a majority of the Supreme Court.

In the instant case we are of the opinion that the right to counsel did not attach at the time the lineup was conducted in view of the holding in *Kirby* even though the defendant was being held under some sort of "vagrancy" charge. We pretermit at this time consideration of the question of whether counsel must be present at identification confrontations held after a person has been charged by affidavit and warrant with the specific offense in question but before indictment.

We are of the opinion that the lineup conducted by the police in the instant case was not so unnecessarily suggestive and conducive to mistaken identification as to be a denial of due process of law. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

We, therefore grant the State's application for rehearing and affirm the judgment of conviction.

Application granted; opinion extended.

Affirmed.

CATES, P. J., and TYSON and HARRIS, JJ., concur.