577 F.2d 1188
 James T. CAVER, Petitioner-Appellant,
v.
STATE OF ALABAMA, Respondent-Appellee.
 No. 77-2450.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 8, 1978.
 
 Richard H. Gill, Montgomery, Ala., for petitioner-appellant.
 William J. Baxley, Atty. Gen., C. Lawson Little, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before TUTTLE, MORGAN and CLARK, Circuit Judges.
 CHARLES CLARK, Circuit Judge:
 
 
 1
 For the third time James T. Caver's petition for writ of habeas corpus comes to this court. See Caver v. Alabama, 511 F.2d 124 (5th Cir. 1975) (Caver I ); Caver v. Alabama, 537 F.2d 1333 (5th Cir. 1976) (Caver II ); see also Caver v. State, 50 Ala.App. 181, 277 So.2d 926 (1973); White v. State, 48 Ala.App. 334, 264 So.2d 565 (1972). We affirm the district judge's compliance with our mandate in Caver II, and finding that Caver is not otherwise entitled to relief, we affirm the denial of the writ.
 
 I. Facts and Prior Proceedings
 
 2
 Around midnight of Saturday, September 28, 1968, two armed men robbed a cafe in Anniston, Alabama, and fatally shot the proprietor. On Monday, September 30, Caver and Jerry White were arrested, without a warrant, at White's residence. A lineup and voice identification procedure was conducted that same day in the absence of counsel, which resulted in identifications of Caver and White as the perpetrators of the crime.
 
 
 3
 Caver and White were both convicted of second degree murder on February 17, 1969, after a joint trial. Prior to trial, defense counsel filed a motion to suppress the identification testimony since it was the product of an unduly suggestive lineup conducted in the absence of counsel, and during trial he objected to the admission of the identifications. The trial court denied his motion, overruled his objections, and let the evidence in. White raised the issues of his identification being the product of a suggestive and counselless lineup on direct appeal, and his conviction was affirmed. White v. State, 48 Ala.App. 334, 264 So.2d 565 (1972). Although the Alabama Court of Criminal Appeals originally decided to reverse White's conviction on the ground that the counselless lineup violated United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), on rehearing it affirmed the conviction due to the intervening decision in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The court noted that prior to the lineup White was being held on a charge of vagrancy and was not then charged with the murder offense for which he was convicted. Therefore, it held that under Kirby the right to counsel had not attached at the time the lineup was conducted since the initiation of judicial criminal proceedings for the murder charge had not yet occurred.
 
 
 4
 Caver did not appeal his conviction directly, but he did attack it collaterally in October 1971 by filing a petition for a writ of error coram nobis in the court that convicted him. In his petition Caver attacked the lineup as being unduly suggestive and because it was conducted without counsel, and he also argued that his vagrancy arrest was a pretext making it illegal and the identification evidence it led to inadmissible. The trial court held that the lineup issues raised by Caver were not cognizable on writ of error coram nobis, and the court refused to reach the issue of the validity of the vagrancy arrest. The Alabama Court of Criminal Appeals affirmed the denial of the writ, Caver v. State, 50 Ala.App. 181, 277 So.2d 926 (1973), stating:
 
 
 5
 Although we are convinced that under the within facts and circumstances none of the above enumerated grounds can be properly raised by Petition for Writ of Error Coram Nobis, we take note of the fact that these questions were duly raised on appeal by Jerry White, co-defendant with Appellant, and all of said contentions were resolved by this Court in favor of the State of Alabama, and against White. White v. State, 48 Ala.App. 334, 264 So.2d 565.
 
 
 6
 We have considered the entire record as required by Title 15, Sec. 389, of the Alabama Code of 1940, Recompiled 1958, and conclude that the trial court committed no error in denying Appellant's writ.
 
 
 7
 277 So.2d at 927.
 
 
 8
 In September 1973 Caver filed a petition for writ of habeas corpus in federal district court raising the issues (i) whether his arrest for vagrancy was a pretext, so as to make evidence subsequently obtained through a stationhouse voice identification procedure inadmissible, and (ii) whether he was subjected to a counselless lineup which was unnecessarily suggestive and which led to irreparable misidentification. The district court initially denied the writ without holding a hearing and without having the full state court record before it. In Caver I we vacated and remanded for an evidentiary hearing to permit the proper factual development of Caver's contentions. On remand the district court again denied the writ, holding that Caver's rights had not been violated by the arrest since probable cause existed to arrest him for robbery and murder, and holding also that the lineup to which Caver was subjected was not unnecessarily suggestive and did not lead to irreparable misidentification. In Caver II we affirmed the holding that the lineup was not unduly suggestive. However, we again found it necessary to remand. Rather than reviewing the holding that Caver's arrest was legal, we directed the district court to consider, in light of Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), whether the state of Alabama had failed to provide Caver with an opportunity for full and fair litigation on his claim that his voice identification was the product of an illegal arrest. On its third go-round, the district court determined that Caver had been provided with an opportunity for full and fair litigation of his fourth amendment claim, and again it denied the writ.
 
 II. The Stone v. Powell Issue
 
 9
 As the case now stands, the sole remaining ground for relief asserted in Caver's petition for habeas corpus is that the voice identification obtained at his lineup should have been suppressed at trial since it was the product of a pretextual arrest. The district court found, and the state apparently has conceded, that at the time Caver was arrested without a warrant there was insufficient probable cause to arrest for vagrancy. If the arrest was an illegal arrest for vagrancy, the identification evidence obtained during the period of illegal detention should have been suppressed at trial. See Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Mills v. Wainwright, 415 F.2d 787 (5th Cir. 1969). Since this ground for relief arises under the fourth amendment exclusionary rule, however, our power to grant habeas corpus relief depends on whether Caver was afforded a full and fair opportunity to litigate this issue in the state courts of Alabama. Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); Caver v. Alabama, 537 F.2d 1333 (5th Cir. 1976).
 
 
 10
 In Stone v. Powell, the Supreme Court held:
 
 
 11
 (W)here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.
 
 
 12
 428 U.S. at 482, 96 S.Ct. at 3052 (footnotes omitted). This circuit has interpreted "full and fair consideration" of a fourth amendment claim to include at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute. O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977); see Sosa v. United States, 550 F.2d 244, 249 & n. 4 (5th Cir. 1977).
 
 
 13
 Caver argues that O'Berry and Sosa hold that the bar of Stone v. Powell becomes operative only after there has been full and fair litigation in the state courts as these cases define. He contends that the mere presence of an opportunity, unavailed of by a defendant, is not sufficient to preclude federal habeas corpus consideration of fourth amendment suppression claims. Under circumstances similar to those in this case, the Second Circuit rejected the argument advanced by Caver. Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977) (en banc). We also reject his argument. An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.
 
 
 14
 Caver seizes on one sentence in the Sosa opinion which might appear to lend support to his position. That sentence, referring to O'Berry states:
 
 
 15
 There, we held that the "opportunity for full and fair consideration" must include at least one evidentiary hearing in a trial court and one decision by an appellate court which, if "presented with an undisputed factual record, gives full consideration to (the prisoner's) Fourth Amendment claims." 4
 
 
 16
 550 F.2d at 249 (footnote quoting O'Berry omitted). However, Sosa was not addressing the issue whether Stone v. Powell requires actual litigation in the state courts but rather was attempting to paraphrase O'Berry. We deem O'Berry to be our guiding authority with respect to the meaning of the quoted sentence. The portion of O'Berry discussed in Sosa clearly was interpreting what a "full and fair" consideration should consist of, not what an "opportunity" would be. In fact, the paragraph in O'Berry immediately following the one quoted in footnote 4 of Sosa emphasizes that "Stone only requires that the State provide an opportunity for full and fair adjudication of Fourth Amendment claims," 546 F.2d at 1213 (emphasis in original), and Judge Goldberg's dissent in O'Berry suggests that the majority felt that its holding was "consistent with the fact that Stone requires only an opportunity for litigation, rather than litigation itself." 546 F.2d at 1222 (emphasis in original). Rather than supporting Caver's contention, O'Berry, to the extent that it speaks to the issue under consideration, supports our holding that actual litigation in state courts is not required to invoke the Stone bar to federal habeas corpus relief.
 
 
 17
 Our interpretation of what the Supreme Court meant by an "opportunity" for full and fair litigation is grounded in the Stone v. Powell opinion itself. The Supreme Court premised the decision on its conviction that federal habeas corpus relief based on the application of the exclusionary rule, when the state courts had already afforded the opportunity for full and fair litigation of the issue, would make a minimal contribution to the effectuation of fourth amendment rights compared to the substantial societal costs associated with exclusion of otherwise probative evidence. See 428 U.S. at 487-495, 96 S.Ct. at 3049-52. The Court noted that the primary justification for the exclusionary rule is the deterrence of police conduct that violates the fourth amendment, 428 U.S. at 485-486, 96 S.Ct. at 3048, and it was unwilling to assume that state trial and appellate courts are insensitive to federal constitutional rights. 428 U.S. at 493 n. 35, 96 S.Ct. at 3051-3052 n. 35. It concluded that the deterrent effect would be adequately served by the risk of exclusion of evidence at trial or the reversal of convictions on direct review, and thus closed the door to federal habeas corpus consideration of such claims when the state machinery afforded a full and fair opportunity to consider them.
 
 
 18
 If police officers who are conducting a search or making an arrest are aware that the state criminal justice system provides an opportunity for full and fair litigation of fourth amendment suppression claims, the policy underlying the exclusionary rule will be served. That a defendant later at trial might choose not to assert his fourth amendment claim could not remove the system's deterrence to police misconduct. Therefore, if state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is "full and fair" within the meaning of O'Berry v. Wainwright, 546 F.2d 1204 (5th Cir. 1977), then Stone v. Powell precludes federal habeas corpus consideration of those issues whether or not the defendant avails himself of that opportunity. Accord, Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977) (en banc). Indeed, the opposite rule would allow a defendant to reserve search issues for collateral attack and thus stand the purposes of Stone v. Powell on their head.
 
 
 19
 Caver next argues that even if an opportunity to litigate rather than actual litigation is sufficient to invoke the Stone bar, he still did not have an opportunity to present his claim. He does not contend that Alabama provides no corrective procedures to redress fourth amendment violations. Cf. United States ex rel. Petillo v. New Jersey, 418 F.Supp. 686 (D.N.J.1976), rev'd, 562 F.2d 903 (3d Cir. 1977). Rather, he argues that his right to have his voice identification excluded as the product of an illegal arrest first became apparent with the Supreme Court's decision in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), which was not decided until two months after Caver's conviction. Since he did not know that the right existed at the time of his trial, he contends that he cannot be said to have had an opportunity to assert that right at his trial. Furthermore, he argues that he was not given the opportunity to raise this issue on collateral attack by petition for writ of error coram nobis since the Alabama courts held this claim not to be cognizable under that writ.
 
 
 20
 Caver's argument that we can grant him relief based on Davis notwithstanding Stone v. Powell since Davis was decided after Caver was convicted presupposes that Davis announced a new principle of law with retroactive application. We need not decide in this case whether a new, retroactive rule is an appropriate consideration in testing the fullness and fairness of an opportunity to litigate a similar issue, for Davis did not announce such a rule. To the contrary, Davis was no more than an application of established principles.
 
 
 21
 A decision establishes a new principle of law "either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Chevron Oil Co. v. Huson, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (citations omitted). Davis meets neither prong of this test it did not overrule past precedent, and the result reached was certainly foreshadowed. Since the Supreme Court decided Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), "all evidence obtained by searches and seizures in violation of the Constitution (has been) . . . inadmissible in a state court." 367 U.S. at 655, 81 S.Ct. at 1691. Davis was new only in the sense that it was the first Supreme Court case to apply the exclusionary rule to evidence as inherently trustworthy as fingerprints, an application clearly foreshadowed by Supreme Court cases emphasizing the deterrent rationale of the exclusionary rule. See, e. g., Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960); Mapp v. Ohio, 367 U.S. at 658, 81 S.Ct. at 1693; Wong Sun v. United States, 371 U.S. 471, 485-86, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); Linkletter v. Walker, 381 U.S. 618, 636-37, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965). Davis did not announce a new principle of constitutional law creating a right that clearly did not exist before.
 
 
 22
 To be sure, Davis would have been a useful weapon in Caver's arsenal had he sought at trial to challenge the arrest and the evidence it led to, but Caver had sufficient weaponry to go to battle without Davis. Besides the landmark opinion in Mapp, it had been established at the time of Caver's trial that an arrest is a seizure within the meaning of the fourth amendment, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and it had also been held that an arrest for a minor crime as a pretext for obtaining evidence of other crimes is unreasonable under the fourth amendment. See Amador-Gonzalez v. United States, 391 F.2d 308 (5th Cir. 1968). More significantly for Stone v. Powell purposes, at the time Caver was arrested police officers knew that the evidentiary fruits of an unlawful arrest were suspect and were subject to exclusion from evidence at trial. The state of the law at the time of his trial did not deprive Caver of an opportunity for full and fair litigation of the admissibility of identification evidence obtained as the result of an invalid arrest. Had he so chosen, he could have raised that issue in addition to his other challenges to the lineup.
 
 
 23
 We also note that even if we were to hold that the timing of Davis was sufficient to get Caver past the Stone bar, Caver still would not be entitled to habeas corpus relief. If Davis announced a "new" rule so that Caver did not have an opportunity to seek to benefit from that rule at the time of his trial, then we would have to give that rule retroactive effect in order to assist Caver. Decisions amplifying the exclusionary rule have generally been denied retroactive effect since the purpose of the rule to deter police misconduct would not be advanced by making such decisions retroactive. See, e. g., Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Since the only "new" part of Davis is in its amplification of the exclusionary rule, the decision would not be entitled to retroactive effect.
 
 
 24
 Our decision that Caver had an opportunity for full and fair litigation of his fourth amendment claim at the time of his trial makes it unnecessary for us to consider whether he had such an opportunity during his state coram nobis proceedings. We affirm the district court's holding, in compliance with our mandate, that Stone v. Powell precludes federal habeas corpus relief based on his fourth amendment claim even though he did not actually litigate the issue in the Alabama courts.
 
 III. The Counselless Lineup
 
 25
 Although we affirm the district judge's compliance with our mandate, Caver's resourceful counsel has convinced us that we should also consider whether Caver is nevertheless entitled to habeas corpus relief since the lineup at which he was identified was conducted without counsel. This point was not asserted in Caver's original petition for relief, but the issue has been raised before this court by Caver's counsel in response to the state of Alabama's change of position with respect to the grounds for the initial arrest of Caver on September 30, 1968.
 
 
 26
 In all proceedings in the Alabama court system and through the first appeal to this court in Caver I, the state of Alabama contended that Caver and White had validly been arrested for vagrancy. This contention contributed to the affirmance of White's conviction on direct appeal. Although the Alabama Court of Criminal Appeals originally determined to reverse White's conviction since he had been identified in a counselless lineup in violation of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), it reversed itself on rehearing and affirmed the conviction because of the Supreme Court's intervening decision in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), that the right to counsel attached only at the initiation of adversary judicial criminal proceedings. Noting that White was under arrest for vagrancy at the time of the lineup, the Alabama court on rehearing held that the right to counsel had not yet attached and affirmed his conviction. White v. State, 48 Ala.App. 334, 264 So.2d 565 (1972). The holding in White was one reason that the Alabama courts denied Caver's petition for writ of error coram nobis. Caver v. State, 50 Ala.App. 181, 277 So.2d 926 (1973).
 
 
 27
 When we remanded in Caver I for a factual development of Caver's contentions, including the contention that the vagrancy arrest was a pretext, Stone v. Powell had not yet risen as a bar to this claim. Recognizing that it could not uphold the arrest as one for vagrancy, the state of Alabama changed its position and argued that Caver had been arrested for robbery and the murder for which he was convicted. The district court held the arrest valid on the premise that probable cause existed to arrest for robbery and murder, and in Caver II we pretermitted consideration of this decision pending determination of the Stone v. Powell issue. On this appeal the state continues to insist that the arrest was for robbery and murder, so we now address the counselless lineup issue.
 
 
 28
 Even if we assume that the arrest was for robbery and murder and that the lineup conducted subsequent to that arrest was without counsel, Caver is still not entitled to habeas corpus relief. A person's right to counsel attaches only "at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. at 688, 92 S.Ct. at 1881. Examples given in Kirby of the initiation of adversary judicial criminal proceedings formal charge, preliminary hearing, indictment, information, or arraignment indicate that the relevant time is when "the government has committed itself to prosecute" and "a defendant finds himself faced with the prosecutorial forces of organized society." 406 U.S. at 689, 92 S.Ct. at 1882. An arrest on probable cause without a warrant, even though that arrest is for the crime with which the defendant is eventually charged, does not initiate adversary judicial criminal proceedings, and therefore Caver had no constitutional right to counsel at the lineup conducted subsequent to his arrest but before he was formally charged. See, e. g., McGuff v. Alabama, 566 F.2d 939 (5th Cir. 1978); United States v. Beckham, 505 F.2d 1316 (5th Cir. 1975).
 
 IV. Conclusion
 
 29
 Regardless of the grounds for the arrest, Caver has no basis for habeas corpus relief. We affirm the district court's denial of the writ.
 
 
 30
 AFFIRMED.
 
 TUTTLE, Circuit Judge, dissenting:
 
 31
 The majority holds that the State of Alabama provided petitioner "an opportunity for full and fair litigation of his fourth amendment claim at the time of his trial." Because this conclusion, in my view, is in direct conflict with our court's decision in O'Berry v. Wainwright, 546 F.2d 1204 (5th Cir. 1977), cert. denied, 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1978), I respectfully dissent.
 
 
 32
 In Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court addressed and decided a single issue:
 
 
 33
 whether state prisoners who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review may invoke their claim again on federal habeas corpus review.
 
 
 34
 Id. at 489, 96 S.Ct. at 3050. The precise meaning of the terms "opportunity" and "full and fair consideration," although left unstated by the Supreme Court, has since been drawn into focus by our court. We held in O'Berry v. Wainwright, supra, that
 
 
 35
 where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court. Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims. Such a distinction makes practical sense because it ensures that a criminal defendant is given a full hearing on his Fourth Amendment claims and the facts underlying those claims at least once at the state level, but it does not require the State to hold evidentiary hearings which would be useless and inefficient.
 
 
 36
 546 F.2d at 1213 (emphasis added). The majority's conclusion that federal court consideration of this petitioner's fourth amendment claim is barred by the mere existence of a state mechanism for airing such a claim, regardless of the fact that no state court has in fact considered it, cannot be squared with O'Berry.
 
 
 37
 Our opinion in O'Berry expressly recognized only one exception to the hearing requirement. Noting that Stone requires only an "opportunity" for state court consideration of fourth amendment claims, we said:
 
 
 38
 (I)f Petitioner deliberately bypassed state procedures for making his Fourth Amendment objections known or if he knowingly waived his Fourth Amendment objections, then a federal District Court would be precluded from granting habeas corpus relief on Fourth Amendment grounds despite the fact that no state hearing was in fact held on Petitioner's claims.
 
 
 39
 546 F.2d at 1213-14 (footnote & citation omitted) (emphasis added). Unless it can be said that petitioner either deliberately bypassed an opportunity to raise his claim at trial or knowingly waived his claim, O'Berry 's call for at least one full hearing must govern the disposition of this appeal.
 
 
 40
 The only matter raised by the State in this regard is that petitioner failed to object to the introduction of the challenged evidence at trial. The State of Florida posited a similar argument in O'Berry. However, we explained:
 
 
 41
 Our examination of the record reveals nothing which would clarify whether Petitioner's failure to object was a strategic maneuver, a deliberate bypass of State procedures for raising and preserving objections or the result of inadvertence or ignorance on the part of Petitioner's . . . counsel.
 
 
 42
 546 F.2d at 1215. Under the circumstances, we held that petitioner did not receive full and fair consideration of his fourth amendment claims at his trial. Given my view that the present case is factually indistinguishable from O'Berry, we are precedent bound to reject the state's argument.
 
 
 43
 Petitioner pressed his fourth amendment claim before the state trial court in a writ of error coram nobis and on appeal to the Alabama Court of Criminal Appeals. The trial court denied the writ on procedural grounds without reaching the pretextual arrest claim. The appellate court merely affirmed denial of the writ. See Caver v. State of Alabama, 511 F.2d 124, 125 (5th Cir. 1975). In short, no Alabama court afforded petitioner's claim the consideration mandated in O'Berry.
 
 
 44
 As we proceed further into the new Stone age of federal habeas corpus jurisprudence, the court en banc or the Supreme Court may determine that our formulation of the "full and fair consideration" requirement in O'Berry is not in conformity with the true import of Stone v. Powell. Until that day comes, I am of the opinion that no bar exists to federal review of fourth amendment claims presented under circumstances such as those in this case. I would reverse the judgment of the district court.