United States Court of Appeals,

Eleventh Circuit.

No. 93-8398.

Tho Van HUYNH, Petitioner-Appellant,

v.

Stacy L. KING, Warden, Respondent-Appellee.

Sept. 23, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 2:92-cv-55-WCO), William C. O'Kelley, Judge.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and SMITH[*], Senior Circuit Judge.

BIRCH, Circuit Judge:

Tho Van Huynh ("Huynh") appeals the judgment of the district court denying his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. Huynh was convicted of robbery, felony murder, and malice murder. He enumerates in his petition three grounds that he contends warrant habeas relief: (1) ineffective assistance of counsel, (2) insufficiency of evidence to support his conviction for malice murder, and (3) double jeopardy. For the reasons that follow, we reverse the district court's order, direct that the writ be granted with respect to Huynh's armed robbery conviction and sentence, and remand for proceedings consistent with this opinion regarding the remaining claims.

## I. BACKGROUND

The Georgia Supreme Court made the following factual determinations:

---

[*]Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Appellant and Hong Binh Thai accompanied Sam Van Ngo to his apartment in Gainesville, Georgia. The victim, C.A. Nguyen, lived with Sam Van Ngo and was watching television in the apartment. Soon after their arrival, Sam Van Ngo shot the victim with a .25 caliber automatic weapon of the same model and caliber as one owned by appellant. Hong Binh Thai assisted him in putting the body into the car and in disposing of it in the woods. Appellant drove the car on the trip to dispose of the body. Over $12,000 which the victim had withdrawn from a savings account was taken from his body by Hong Binh Thai during the drive to the woods. After disposing of the body, they drove to a lake where Sam Van Ngo and Hong Binh Thai threw away the murder weapon and washed their hands. Then they returned to Gainesville where the appellant stayed in the apartment which he shared with Hong Binh Thai while Hong Binh Thai drove Sam Van Ngo to the Atlanta Airport. When Hong Binh Thai returned to Gainesville, he gave appellant two thousand dollars, half of what Sam Van Ngo had given him of the stolen money. Appellant was arrested in California some two weeks after the crimes. At the time of his arrest, he had thirteen one hundred dollar bills on his person.

*Van Huynh v. State,* 258 Ga. 663, 373 S.E.2d 502, 502-03 (1988).

Huynh initially was convicted of malice murder and armed robbery on October 17, 1987. After a notice of appeal was filed, the trial court granted Huynh a new trial.[1] Huynh was retried and convicted of felony murder, malice murder, and armed robbery on November 20, 1987, and received consecutive life sentences solely for malice murder and armed robbery. On direct appeal, the Georgia Supreme Court reversed Huynh's felony murder conviction after finding that he had been placed in double jeopardy by being retried for an offense for which he had not been found guilty in the first trial. *See id.* 373 S.E.2d at 503. The court affirmed the remaining convictions as well as the sentences. Huynh filed a petition for habeas corpus in state court alleging ineffective assistance of counsel. The court denied the petition, and the

---

[1]Prior to his retrial, the Georgia Supreme Court affirmed Huynh's original convictions. *Van Huynh v. State,* 257 Ga. 375, 359 S.E.2d 667 (1987).

Georgia Supreme Court denied Huynh's application for probable cause to appeal. Huynh next filed a petition for federal habeas corpus relief. The district court found Huynh's claims to be either procedurally barred or lacking in merit, and denied relief. In addition, the court granted Huynh's motion for probable cause to appeal.

## II. DISCUSSION[2]

A. *Ineffective Assistance of Counsel*

On the eve of Huynh's retrial, his counsel filed a motion to suppress the money found in Huynh's wallet at the time of his arrest. Defense counsel argued that the warrantless pat-down search resulting in the discovery of this money exceeded constitutional boundaries. More specifically, counsel maintained that although the police officer who initially frisked Huynh for

---

[2]On April 24, 1996, while this case was pending on appeal, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (the "Act"). Title I of the Act significantly curtails the scope of collateral review of convictions and sentences. Specifically, the amended version of 28 U.S.C. § 2254 provides, in pertinent part, that the writ of habeas corpus shall not be granted with respect to any claim adjudicated on the merits in a state court proceeding unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

We decline to apply this section retroactively in this case because neither party argues for such an application and because Huynh filed his petition on March 24, 1992, prior to the date on which the Act became effective.

weapons[3] found none, he then proceeded to conduct a second pat-down search, found a wallet, looked inside, and removed the incriminating evidence. The trial court dismissed the motion as untimely filed. On appeal, the Georgia Supreme Court noted that Georgia's local rules mandate that all motions be filed by the arraignment unless that time is extended by the trial judge. *Van Huynh,* 373 S.E.2d at 503. In his federal habeas corpus petition, Huynh alleged both that the trial court erred in denying his motion to suppress and that trial counsel was ineffective for failing to file the suppression motion in a timely fashion. The district court found that although Huynh had been deprived of a fair opportunity to litigate his Fourth Amendment claim, he had not shown cause for his attorney's failure to file the motion in accordance with the local rules. The court further resolved that counsel's decision to file an untimely motion was strategic and thus did not constitute ineffective assistance.

Huynh's ineffective assistance of counsel claim presents a mixed question of law and fact and is subject to *de novo* review. *Oliver v. Wainwright,* 782 F.2d 1521, 1524 (11th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986). A claim of ineffective assistance of counsel requires a showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding

---

[3]We assume for purposes of this opinion, without deciding, that this warrantless pat-down search for weapons would have been permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

would have been different. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689, 104 S.Ct. at 2065. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89, 104 S.Ct. at 2064-65. The Supreme Court explicitly has extended the right to federal habeas review of Sixth Amendment claims to instances in which the alleged ineffective representation necessarily implicates a Fourth Amendment claim. *See Kimmelman v. Morrison,* 477 U.S. 365, 382-83, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986). ("[W]e reject petitioners' argument that [*Stone v. Powell* 's] restriction on federal habeas review of Fourth Amendment claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue.... We hold that federal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying attorney error.").

Huynh raised the issue of ineffective assistance of counsel with respect to the untimely filing of the suppression motion before the state habeas court. At an evidentiary hearing, Huynh's trial counsel, Jim Whitmer, provided the following testimony:

> WHITMER: I know that the general rule is that a Motion to Suppress is supposed to be filed at arraignment or later with permission of the court, but there are also some holdings that say that a lot of things are always discretionary with the

trial judge. And so, it wasn't conclusive in my mind that the judge would automatically dismiss it for untimeliness, simply because of when it was filed. I had some expectation that he might consider it. But in my judgment, we would have an appellate issue either way. If he dismissed it, then we could argue that he should have heard it. And if he heard the motion and denied it, then we could argue that he heard it but should have granted it.

COURT: But you knew the motion was not timely when you filed it without regard to its merit? Is that correct?

WHITMER: Yes, sir.

COURT: And you could have filed it timely had you so chosen?

WHITMER: I could have.

Exh. 2 at 25. Whitmer testified that he felt certain that the police officers who conducted the allegedly illegal search were prepared to fabricate testimony at trial, that the trial court likely would credit their testimony, and that the motion to suppress would ultimately not succeed. A colloquy between Whitmer and Huynh's new counsel, however, also revealed the following testimony:

QUESTION: Mr. Whitmer, you felt that as a matter of truth and facts that the motion was a good one, didn't you?

ANSWER: Yes, sir.

QUESTION: All right. Being the experienced trial lawyer that you are, it was your opinion that if the truth was laid out, that the search was illegal and violated the Fourth Amendment?

ANSWER: Yes, sir ...

QUESTION: The officer probably had the right to conduct the frisk, the Terry-type frisk, that when he extracted the pocketbook from this young man and got $3,100.00[4] that was allegedly taken from the dead man, that that was definitely illegal and improper?

---

[4]This appears to have been an erroneous description of the amount of money recovered from Huynh's wallet. In actuality, the police found $1,300.00 in his wallet immediately before arresting him.

ANSWER: That was my opinion?

QUESTION: That was your opinion.

ANSWER: Yes.

QUESTION: And that's the reason you filed the motion to suppress evidence?

ANSWER: Yes, sir.

*Id.* at 18-19. Whitmer also testified that he and his co-counsel had surmised that "perhaps the Eleventh Circuit would view [the motion to suppress] a little bit differently on whether it should have been heard or whether it should have been filed earlier, and so that was essentially the reasons why we filed it when we did." *Id.* at 16.

The state court determined that Huynh's trial counsel had made a "deliberate strategic and tactical decision to delay the filing of the motion to suppress...." Exh. 3 at 2. The district court reviewing Huynh's federal habeas corpus petition similarly concluded that "the motion to suppress was filed simply to give petitioner an additional issue on appeal." R1-12-14.

Our independent review of the record and the applicable decisional law, however, convinces us that the district court erred in its disposition of Huynh's ineffective assistance of counsel claim. In *Kimmelman,* the Supreme Court explicitly denominated as "unreasonable" the precise trial strategy invoked by Huynh's counsel in this case:

No reasonable lawyer would forgo competent litigation of meritorious, possibly decisive claims on the remote chance that his deliberate dereliction might ultimately result in federal habeas review. Furthermore, when an attorney chooses to default a Fourth Amendment claim, he also loses the opportunity to obtain direct review under the harmless-error standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824,

17 L.Ed.2d 705 (1967), which requires the State to prove that the defendant was not prejudiced by the error. By defaulting, counsel shifts the burden to the defendant to prove that there exists a reasonable probability that, absent his attorney's incompetence, he would not have been convicted.

477 U.S. at 383 n. 7, 106 S.Ct. at 2587 n. 7.

Placing this discussion in context, we conclude that Huynh's counsel's tactical decision to delay the filing of a potentially meritorious suppression motion in order to later obtain more favorable federal habeas review was objectively unreasonable for several reasons. First, under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the state court's determination that Huynh had failed to abide by a state procedural rule in filing his motion would serve as an adequate and independent state ground to deny relief independent of the merits of the federal claim. *See Coleman v. Thompson,* 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). Huynh therefore would have procedurally defaulted his Fourth Amendment claim, barring our review of the claim unless he could demonstrate cause for the default and prejudice arising therefrom, or that failure to consider the claim would result in a fundamental miscarriage of justice. *Id.* at 750, 111 S.Ct. at 2565. Cause to overcome the procedural default bar would be established in this instance if Huynh could show ineffective assistance of counsel. As the Supreme Court expressly articulated, however, no competent lawyer would choose deliberately to "set up" an ineffective assistance of counsel claim whereby that lawyer's own incompetence would serve as cause for defaulting a claim. *See Kimmelman,* 477 U.S. at 383 n. 7, 106 S.Ct. at 2587 n. 7. Second, Huynh would have the extraordinarily weighty burden of

showing prejudice arising from his counsel's ineffective assistance. *See id.* Third, any consideration of Huynh's Fourth Amendment claim, standing alone, necessarily would be barred by the doctrine announced in *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) ("[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.") In this circuit, we have construed *Stone v. Powell* to bar consideration of a Fourth Amendment claim if the state has provided an opportunity for full and fair litigation of the claim "whether or not the defendant employs those processes."[5] *Caver v. State of Ala.,* 577 F.2d 1188, 1192 (5th Cir.1978). Again, our precedent would preclude consideration of Huynh's Fourth Amendment claim unless he were able to overcome the bar of procedural default. Trial counsel's purposeful strategy to erect such hurdles to consideration of a claim on federal collateral review can only be characterized as unreasonable.

---

[5]In the magistrate judge's Report and Recommendation, adopted by the district court, the magistrate judge erroneously concludes that *Stone v. Powell* is not applicable to Huynh's Fourth Amendment claim and cites *Agee v. White,* 809 F.2d 1487 (11th Cir.1987) in support of this determination. R1-12-7. In *Agee,* however, we found that the petitioner had been denied full and fair consideration of one of his Fourth Amendment claims both at trial and on direct review. There are no allegations in this case that there were no avenues available to Huynh to review his Fourth Amendment claim at the state level, or that the procedural mechanism through which Huynh's claim was reviewed was inadequate. Contrary to the magistrate judge's analysis, *Stone v. Powell* would preclude consideration of Huynh's Fourth Amendment claim in this circuit.

Although our examination of the record permits us to evaluate counsel's performance with respect to competency in this case, we decline to apply the prejudice prong of the *Strickland* analysis without the benefit of a district court's factual findings on the merits of the underlying Fourth Amendment claim. While we readily conclude that the record indicates that a motion to suppress, had it been filed, would not have been frivolous, no court has issued findings regarding the legitimacy of the claim. Furthermore, although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim such as the one raised by Huynh, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. *Kimmelman,* 477 U.S. at 382, 106 S.Ct. at 2586. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence. *Id.,* 477 U.S. at 382, 106 S.Ct. at 2586-87. Because the merit of Huynh's Fourth Amendment claim is dispositive to a finding of prejudice, we remand to the district court for an evidentiary hearing to determine whether the search in question violated Huynh's Fourth Amendment right.[6] *Cave v. Singletary,* 971 F.2d 1513, 1516 (11th Cir.1992) ("A petitioner

---

[6]If the district court finds that Huynh's Fourth Amendment right was violated and as a result that, had counsel filed a motion to exclude this evidence, it would have been granted, the court need not conduct any further analysis regarding whether there exists a reasonable probability that the verdict would have been different had the evidence seized from Huynh's wallet not been admitted. As we discuss in detail in the next section of this opinion, we conclude as a matter of law that, had the evidence in question been excluded, the outcome would have been different under the standards applicable to both *Strickland* and our review of the sufficiency of the evidence.

is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to relief.").

B. *Sufficiency of the Evidence*

Huynh is entitled to habeas corpus relief if, upon the record evidence adduced at the trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 22791-92, 61 L.Ed.2d 560 (1979). Under Georgia law, when a conviction is based solely on circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis save that of the guilt of the accused." O.C.G.A. § 24-4-6 (1995). The findings of fact by a state court of competent jurisdiction evidenced by reliable indicia are presumed to be correct. 28 U.S.C. § 2254(d) (1994).[7] The conclusions of the state court and district court as to whether the evidence was sufficient to satisfy federal due process standards is a mixed question of fact and law subject to plenary review. *Wilcox v. Ford,* 813 F.2d 1140, 1143 n. 3 (11th Cir.), *cert. denied,* 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 247 (1987).

Huynh was convicted of having intentionally aided and abetted Hong Binh Thai and Sam Van Ngo in the murder of C.A. Nguyen

---

[7]There are eight exceptions to this presumption set forth in 28 U.S.C. § 2254(d). Because Huynh does not challenge directly the accuracy of the factual findings made by the state court, these exceptions are not relevant for purposes of this discussion.

("Nguyen").[8]   At trial, Huynh contended that he was coerced to participate in events subsequent to Nguyen's murder;  in essence, Huynh claimed (and continues to claim) that his participation was exclusively after-the-fact.   Huynh correctly notes that under Georgia law, a defendant must be an accessory before-the-fact to be found guilty as an aider or abettor to a crime.  *Purvis v. State,* 208 Ga.App. 653, 433 S.E.2d 58, 59, *cert. denied,* 208 Ga.App. 910 (1993).   The following facts presented at trial are undisputed: the police found a .25 caliber bullet casing in the apartment of the victim, and Huynh owned a .25 caliber weapon.  Huynh drove Hong Binh Thai and Sam Van Ngo, with the victim's body in the back seat, to a wooded area where they disposed of the dead body.   Hong Binh Thai subsequently gave Huynh $2,000.00, representing half of the money Sam Van Ngo gave to Hong Binh Thai after robbing Nguyen. Huynh and Hong Binh Thai were apprehended shortly thereafter in California.   In a search conducted prior to his arrest, Huynh was found carrying thirteen one hundred dollar bills.  Viewed in the light most favorable to the prosecution, we conclude that this evidence was sufficient to support Huynh's conviction.

We further conclude, however, that the evidence presented at

---

[8]O.C.G.A. § 16-2-20 provides, in relevant part:

> (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.
>
> (b) A person is concerned in the commission of a crime only if he:
>
> ....
>
> (3) Intentionally aids or abets in the commission of the crime[.]

trial concerning the money seized from Huynh immediately prior to his arrest was, at the very least, critical in pointing to his culpability as an accomplice to murder before-the-fact. Sam Van Ngo testified that he had taken Huynh's weapon from his apartment and used it to murder Nguyen. He also testified that he had committed the murder and robbery alone, and had ordered Huynh and Hong Binh Thai to assist him in disposing of the body. Huynh consistently has maintained that he had no knowledge that Sam Van Ngo intended to rob and kill Nguyen and that his participation after the murder took place under duress. The admission at trial of the money obtained from Huynh's wallet as a result of the allegedly illegal search was extraordinarily important in sustaining the prosecution's theory that Huynh intentionally had participated in a plan to murder Nguyen from the outset. Moreover, without the evidence of the money, the evidence presented at trial would not have been sufficient to exclude every other reasonable hypothesis save that of Huynh's guilt. We therefore resolve that if the district court finds, following the evidentiary hearing on the prejudice prong of Huynh's ineffective assistance of counsel claim, that the second pat-down search of Huynh leading to the discovery of the thirteen one hundred dollar bills violated his Fourth Amendment right and that, consequently, this evidence should have been suppressed at trial, then the evidence in this case was legally insufficient to convict Huynh of malice murder.[9] Stated differently, we conclude that if all evidence of the money had been

---

[9]Because we vacate Huynh's armed robbery conviction, *see infra* p. 27, we need not reach the question of sufficiency of the evidence with respect to this offense.

excluded at trial, no rational trier of fact could have found Huynh

guilty beyond a reasonable doubt of malice murder.[10]

C. *Double Jeopardy*

Finally, Huynh asserts that he received multiple punishments

for the same offense, thereby subjecting him to double jeopardy,

when he was convicted and sentenced to consecutive life sentences

for the greater offense of malice murder and the lesser included

offense of armed robbery.  He asks that we reverse his conviction

and sentence for armed robbery.  The State avers that (1) Huynh has

never raised this particular double jeopardy claim in either state

or federal court, (2) his state pleadings and original federal

habeas petition stated only that he had been subjected to double

jeopardy by being retried for felony murder, and (3) the claim

presented in this appeal therefore is unexhausted.  The State does

not argue the merits of Huynh's double jeopardy challenge, but asks

that we decline to entertain the claim.  We review Huynh's double

---

[10]For the sake of clarity, we emphasize that under the
particular circumstances of this case, the claims that counsel
was ineffective and that the evidence was insufficient to convict
Huynh of malice murder are inextricably intertwined;  in fact,
the court's determination with respect to the prejudice prong of
Huynh's ineffective-assistance-of-counsel claim is *dispositive* of
the sufficiency-of-the-evidence claim *as a matter of law.*  The
court necessarily must determine that Huynh's Fourth Amendment
rights were violated and that the thirteen one hundred dollar
bills should have been excluded from evidence in order to find
that counsel's failure to file a motion to exclude this money
prejudiced Huynh under *Strickland.*  If the court finds that the
money was improperly admitted and that Huynh therefore was
prejudiced by his lawyer's failure to seek to have it excluded,
then we conclude as a matter of law that the balance of the
evidence was insufficient to support a conviction for malice
murder.  Theoretically speaking, if Huynh's counsel had filed the
suppression motion (as he should have) and the trial court had
granted the motion, then no rational trier of fact could have
found Huynh guilty beyond a reasonable doubt of malice murder.

jeopardy claim *de novo.* *Mars v. Mount,* 895 F.2d 1348, 1351 (11th Cir.1990).

The State correctly notes that in his *pro se* petition before the district court, Huynh stated that "since he was not found guilty of felony murder in his first trial, he has been subjected to double jeopardy." R1-1. Huynh also stated that he "would like to use the brief filed in Georgia Supreme Court by trial attorney on this issue." *Id.* That brief contained as one ground for appeal a request that the conviction for felony murder be reversed based on double jeopardy.[11] Exh. 6B at 22. In its answer to Huynh's petition, however, the State argued:

> To the extent the Petitioner argues that his conviction for felony murder and malice murder in the second trial constitutes double jeopardy, that argument is moot because the Georgia Supreme Court reversed and vacated the felony murder conviction ... The remaining offenses for which Petitioner stands convicted, the offenses of malice murder and armed robbery, do not merge as a matter of law or fact in this case. Thus, the prohibition against double jeopardy is not implicated.

R1-7-11. We acknowledge that it is neither clear nor obvious that Huynh explicitly raised in his federal habeas petition the issue of whether his malice murder and armed robbery convictions merge in violation of double jeopardy; yet, the State apparently understood that there were several possible distinct interpretations of Huynh's double jeopardy claim. The answer indicates that the State afforded the *pro se* petition a liberal construction and expressly

---

[11]As previously mentioned, the Georgia Supreme Court had already reversed Huynh's felony-murder conviction after finding that the conviction constituted a violation of the Double Jeopardy Clause. *Van Huynh,* 373 S.E.2d at 503. The court also determined that Huynh had been sentenced only for malice murder and armed robbery and affirmed both the sentences and remaining convictions. *See id.*

responded to the claim argued by Huynh in this appeal.  Although the State now suggests that the brief discussion of the merger issue was inadvertent and gratuitous, we decline to find a claim to be unexhausted after the State has argued the merits of that same claim in its answer brief.  *Pennington v. Spears,* 779 F.2d 1505, 1506 (11th Cir.1986) (where State declined to raise exhaustion defense, instead requesting the district court to deny petition on the merits, court found State had waived exhaustion as a defense: "Although it is not clear from the record whether [petitioner] has in fact exhausted state remedies, it is clear that the state does not assert a defense of lack of exhaustion.").

We also conclude that Huynh's malice murder and armed robbery convictions merge under Georgia decisional law.  The Georgia Supreme Court has construed Georgia statutory law as mandating that although a defendant may be prosecuted for each crime arising from the same conduct, he may not be convicted of more than one crime if one crime is included in the other.  *Addison v. State,* 239 Ga. 622, 238 S.E.2d 411, 412-13 (1977).  The court has further held that armed robbery may be a lesser included offense of malice murder where a defendant is a conspirator in an armed robbery scheme and a murder occurs as a probable consequence of that armed robbery.  *Id.*  Specifically, the court has vacated an armed robbery conviction after finding that "[w]here the defendant is not the killer, and where the only method by which malice may be imputed to defendant is by showing his participation in the armed robbery, the armed robbery is an included offense as a matter of fact[.]"  *Id.* 238 S.E.2d at 413.

Here, the State has never contended that Huynh was the "triggerman," and he was never charged with this offense; rather, it consistently has been the State's theory that Huynh was an accomplice who aided Sam Van Ngo in committing murder. As we have addressed in depth in the preceding discussion, the robbery of the victim in this case was the critical evidence in allowing the jury to impute the malice and intent of Sam Van Ngo to Huynh. Proof of the robbery therefore was essential in supporting Huynh's conviction for malice murder. *Burke v. State,* 234 Ga. 512, 216 S.E.2d 812, 814 (1975). Our precedent dictates that the Double Jeopardy Clause prohibits the state from punishing a person twice for the same offense, and a greater offense and lesser included offense are considered the same offense for purposes of Double Jeopardy Clause protection. *United States v. Kaiser,* 893 F.2d 1300, 1303 (11th Cir.1990). The specific facts of this case dictate that, under Georgia law, the armed robbery for which Huynh was convicted was a lesser included offense of the malice murder for which he was convicted.[12] Accordingly, we vacate the district court's order and direct that the writ issue with respect to Huynh's conviction and sentence for armed robbery.

## III. CONCLUSION

In this appeal, Huynh asks that we grant the writ of habeas corpus with respect to his convictions and sentences for malice murder and armed robbery. As grounds for this request, he avers

---

[12]The Georgia Supreme Court has observed that an armed robbery may be a lesser included offense "as a matter of fact, though not as a matter of law" based on the factual circumstances of each case. *Addison,* 239 Ga. at 622, 238 S.E.2d at 413.

that his trial counsel was ineffective and that the evidence was insufficient to support the convictions.  In addition, Huynh asks that we vacate his conviction and sentence for armed robbery based on a violation of the Double Jeopardy Clause.  We conclude that Huynh has shown that counsel's performance at trial regarding the decision to delay filing a potentially meritorious motion to suppress was neither sound strategy nor reasonable in light of prevailing professional norms.  We therefore vacate the district court's judgment regarding the ineffective assistance of counsel claim and remand for an evidentiary hearing to resolve whether Huynh was prejudiced by counsel's performance.  We further conclude that if the district court finds, pursuant to its examination of the ineffective assistance of counsel issue, that Huynh established a valid Fourth Amendment claim and that the money discovered as a result of the relevant search should not have been introduced at trial, then the evidence was legally insufficient to support his conviction and the writ should issue forthwith.  Finally, we resolve that Huynh's conviction and sentence for armed robbery subjected him to double jeopardy.  We therefore reverse the district court's order with respect to this claim and direct that the writ issue on the armed robbery conviction and sentence.

VACATED, REVERSED, and REMANDED with instructions.