Calvin Eugene **SALTERS**, Petitioner,

v.

Carmen **PALMER**, Respondent.

No. CIV.A. 02–CV–40218–FL.

United States District Court,
E.D. Michigan,
Southern Division.

July 14, 2003.

Laura G. Moody, Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for respondent.

Calvin Salters, Deerfield Correctional Facility, Ionia, MI, pro se.

## OPINION AND ORDER DENYING PETITION FOR THE WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Petitioner Calvin Eugene Salters, a state prisoner currently confined at the Cooper Street Correctional Facility in Jackson, Michigan, has filed a petition for the writ of habeas corpus pursuant to 28

U.S.C. § 2254. At the time he instituted this action, Petitioner was incarcerated at the Deerfield Correctional Facility in Ionia, Michigan. Respondent Carmen Palmer is the warden at that facility.

Petitioner was convicted of possession with intent to deliver fifty grams or more but less than 225 grams of a mixture containing cocaine and possession of marijuana following a jury trial in the Recorder's Court for the City of Detroit in 1998. He was sentenced as a habitual offender to seven to thirty years imprisonment on the cocaine conviction and to time served on the marijuana conviction. In his pleadings, Petitioner raises claims concerning the jury instructions, the propriety of the traffic stop and search and seizure, the sufficiency of the evidence, the admission of certain evidence, the jury voir dire, the effectiveness of trial counsel, cumulative error, and sentencing. For the reasons stated below, the petition for the writ of habeas corpus is denied.

## I. *Factual Background*

Petitioner's convictions stem from his possession with intent to deliver cocaine and his possession of marijuana on March 6, 1998 in Romulus, Michigan. At trial, Police Officer Richard Balzer testified that he saw Petitioner's vehicle stopped in the road with the passenger door open. There were no other vehicles on the street, but the officer intended to ticket Petitioner for impeding traffic. As he approached the vehicle, he smelled marijuana and saw a forty-ounce malt liquor beverage between the passenger's legs. The passenger was arrested for having an open alcohol container. During a pat-down of the passenger, Officer Balzer found what he suspected was a marijuana cigarette. He also found a burned marijuana cigarette in the car's ashtray. A drug dog was summoned to the scene.

Police Officer Anthony Norman testified that he initiated a traffic stop of the vehicle Petitioner was driving on that date because the vehicle was blocking two lanes of traffic on a residential street. Officer Norman smelled marijuana and asked Petitioner for a driver's license, proof of insurance, and registration. Petitioner did not produce any of the documents. Officer Norman observed the search of Petitioner's vehicle. The dog and trainer searched the vehicle and found cocaine contained inside a rubber glove secreted behind the glove box. They also found crack cocaine inside another rubber glove in the trunk, as well as plastic bags of marijuana. Petitioner was arrested and taken to the police station. While Petitioner was being processed at the station, police recovered $700 from his shoe and $300 from his pocket. Officer Norman further testified that he observed a pair of rubber gloves similar to the ones containing the cocaine in Petitioner's back pocket when Petitioner appeared at his preliminary examination. Those gloves were confiscated from Petitioner and admitted into evidence at trial.

The passenger in the vehicle, Andre Peters, testified that he worked with Petitioner at Art Van Furniture. He admitted having a marijuana cigarette in his pocket on the day of the incident, but denied that marijuana was being smoked in the vehicle or that officers found a burned marijuana cigarette in the ashtray. He denied knowing anything about the cocaine in the vehicle.

Petitioner's grandmother, Donna Wilson–Thrasher, testified that the vehicle Petitioner was driving at the time of his arrest was leased by her husband, who had been declared incompetent. She knew Petitioner had driven it that day, but she did not recall telling a female police officer that he had been driving it all week. She

also testified that neither she nor her husband put cocaine in the vehicle.

Police Officer Cora Semrau testified that Ms. Thrasher told her that Petitioner had been driving her husband's vehicle for the entire week prior to his arrest and had used the vehicle for about one week several weeks earlier than that as well.

Petitioner testified on his own behalf at trial. Petitioner stated that he borrowed his grandfather's car the morning of his arrest to drive to work. He claimed that he did not put narcotics in the vehicle and did know narcotics were in the vehicle. He testified that his grandfather was mentally ill and suffered from a crack cocaine drug problem. Petitioner testified that the $300 in his pocket was from work, as reflected by a pay stub, and that it was returned to his family. Petitioner testified that the police confiscated the other $700, which he claimed he saved and borrowed to pay for expenses related to serving as a best man in a friend's wedding.

At the close of trial, the jury found Petitioner guilty of possession with intent to deliver fifty grams or more but less than 225 grams of a mixture containing cocaine and possession of marijuana. The trial court subsequently sentenced him as a second habitual offender to seven to thirty years on the cocaine conviction and time served on the marijuana conviction.

## II. *Procedural History*

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the same claims contained in the present petition. The Michigan Court of Appeals affirmed his convictions and sentence. *People v. Salters*, No. 215396, 2001 WL 765852 (Mich.Ct.App. Jan.26, 2001) (unpublished). Petitioner filed an application for leave to appeal with the Supreme Court of Michigan raising the same claims, which was denied. *People v.*

*Salters*, 465 Mich. 920, 638 N.W.2d 749 (2001).

Petitioner filed the present habeas petition on August 19, 2002, asserting that: (1) the trial court erred in instructing the jury on intent to deliver and reasonable doubt, (2) the trial court erred in failing to suppress evidence seized during an illegal traffic stop and search, (3) the trial court erred in denying his motion for directed verdict, (4) the trial court erred in refusing to exclude gloves seized from him during the preliminary examination, (5) the trial court's practice of having multiple challenges of jurors is improper, (6) trial counsel was ineffective, (7) cumulative error, (8) the trial court erred in entering an amended judgment of sentence to reflect a second habitual offender enhancement, and (9) the amended judgment is void for lack of jurisdiction. Respondent filed an answer to the petition on February 19, 2003, asserting that it should be denied because Petitioner's claims are procedurally defaulted, non-cognizable, and/or lack merit.

## III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Feder-

al law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court of the United States undertook a detailed analysis of the correct standard of review under the AEDPA:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. 1495 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411, 120 S.Ct. 1495.

"Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent Supreme Court precedent.

Lastly, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. *Analysis*

### A. *Jury Instruction Claims*

Petitioner first claims that he is entitled to habeas relief because the trial court erred in instructing the jury on possession with intent to deliver and reasonable doubt. Respondent alleges that this claim is barred by procedural default because Petitioner failed to object to the instructions at trial.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir.1991). In *Wainwright*, the Supreme Court explained that a peti-

tioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85, 97 S.Ct. 2497.

■ In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

■ Here, the Michigan Court of Appeals rendered the last reasoned opinion discussing the jury instructions. In dismissing Petitioner's challenges to those jury instructions, the Court of Appeals relied upon a state procedural bar—Petitioner's failure to object to the instructions at trial. *See Salters*, 2001 WL 765852 at *1. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285

(6th Cir.1989). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir.1991). In this case, the Michigan Court of Appeals dismissed Petitioner's jury instruction claims based upon procedural default—his failure to object to those instructions at trial.

■ A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546; *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir.1996). In this case, Petitioner alleges that trial counsel was ineffective as cause to excuse his default. Even assuming that Petitioner could establish cause, however, he cannot establish prejudice as his underlying claims lack merit.

■ In order for habeas relief to be warranted on the basis of an improper jury instruction, a petitioner must show that the challenged instruction was so infirm that it rendered the trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is a heavy one. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); *Aus-*

*tin v. Bell,* 126 F.3d 843, 846 (6th Cir. 1997). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *Binder v. Stegall,* 198 F.3d 177, 179 (6th Cir.1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *Grant v. Rivers,* 920 F.Supp. 769, 784 (E.D.Mich.1996) (Gadola, J.).

 Petitioner asserts that the trial court's supplemental instruction to the jury (in response to a note) indicating that there is no time period for intent to deliver was erroneous. The Michigan Court of Appeals found no plain error with respect to this claim. *See Salters,* 2001 WL 765852 at *1. This Court agrees. The trial court correctly informed the jury that there is no time limit for intent to deliver as a matter of Michigan law. The Michigan Court of Appeals found that the trial court did not instruct the jury that the intent to deliver need not be contemporaneous with the possession of the cocaine. Petitioner has not rebutted this factual finding with clear and convincing evidence. Habeas relief is not warranted.

 Petitioner also asserts that the trial court erred in instructing the jury on reasonable doubt by failing to include "moral certainty" language. The Michigan Court of Appeals found no plain error with respect to this claim. *See Salters,* 2001 WL 765852 at *1. This Court agrees and finds that the Michigan Court of Appeals' decision is consistent with federal law and constitutes a reasonable application of that law. The proper inquiry for a court reviewing a reasonable doubt instruction is not whether the jury instruction could have been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did apply the jury instruction in an unconstitutional manner. *Victor v. Nebraska,* 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

The reasonable doubt instruction given by the trial judge properly indicated the prosecution's burden of proof. The court's non-use of the term "moral certainty" did not violate Petitioner's due process rights because the trial court equated reasonable doubt with "a fair, honest doubt" and "a doubt based upon reason and common sense." The trial court also instructed the jury that Petitioner was presumed innocent until proven guilty; that the prosecution bore the burden of proving that Petitioner was guilty beyond a reasonable doubt, and that Petitioner was not required to come forward with any evidence. Considering the jury instructions in their entirety, the Court finds that the trial court properly instructed the jury on the concept of reasonable doubt and there is no reasonable likelihood that the jury applied the reasonable doubt instruction in an unconstitutional manner. Moreover, the United States Court of Appeals for the Sixth Circuit has held that a similar reasonable doubt jury instruction satisfies due process. *See Binder,* 198 F.3d at 178–79; *see also Szenay v. Yukins,* No. 98–1138, 1999 WL 187482, *6–7 (6th Cir.1999) (unpublished). Petitioner has not established that the jury instructions, read as a whole, rendered his trial fundamentally unfair.

 Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."

*Bousley v. United States*, 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing. His jury instruction claims are thus barred by procedural default, are otherwise without merit, and do not warrant habeas relief.

### B. *Fourth Amendment Claims*

▮▮▮▮ Petitioner next claims that he is entitled to habeas relief because the incriminating evidence against him was the product of an illegal traffic stop and search of his vehicle and should have been suppressed. Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir.2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir.1982)).

Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim. *See, e.g., People v. Ferguson*, 376 Mich. 90, 93–94, 135 N.W.2d 357, 358–59 (1965) (motion to suppress), *People v. Harris*, 95 Mich.App. 507, 509, 291 N.W.2d 97, 98–99 (1980). Petitioner has not shown that a failure of that procedural mechanism prevented him from litigating his claims. Petitioner was provided a suppression hearing before the trial court and raised his Fourth Amendment claim before the Michigan appellate courts. Those courts addressed the merits of the claim and determined that police had reasonable suspicion to effectuate the traffic stop and to search his vehicle. *See Salters*, 2001 WL 765852 at *1–2.

Given this record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and he received all the process he was due. Accordingly, any claims concerning the validity of Petitioner's traffic stop and search of his vehicle are not cognizable on habeas review pursuant to *Stone v. Powell*. Petitioner is not entitled to relief on this claim.

### C. *Directed Verdict/Insufficient Evidence Claim*

Petitioner next contends that he is entitled to habeas relief because the trial court erred in denying his motion for directed verdict where the evidence was insufficient to show that he possessed the cocaine. In *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781; *see also DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir.1998). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, *Huynh v. King*, 95 F.3d 1052, 1059 (11th Cir.1996); *Maes v. Thom-*

*as,* 46 F.3d 979, 988 (10th Cir.1995), this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *See Dell v. Straub,* 194 F.Supp.2d 629, 647 (E.D.Mich.2002).

 Under Michigan law, a defendant need not have actual physical possession of a controlled substance in order to be guilty of possessing it. *See People v. Wolfe,* 440 Mich. 508, 519–20, 489 N.W.2d 748 (1992). Possession of a controlled substance may be actual or constructive. *Id.* "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* at 521, 489 N.W.2d 748.

 Applying the *Jackson* standard, the Michigan Court of Appeals concluded that there was sufficient evidence for a rational trier of fact to conclude that Petitioner was in possession of the cocaine that was recovered from the car. *Salters,* 2001 WL 765852 at *3. This Court finds that the Michigan Court of Appeals' decision is consistent with *Jackson* and constitutes a reasonable application thereof, as well as a reasonable determination of the facts in light of the evidence. At the time of the traffic stop, Petitioner was the driver of the vehicle, which was leased to his step-grandfather. A rubber glove containing cocaine was found behind the glove box and a rubber glove containing cocaine and a plastic bag containing marijuana were found in the trunk. The same type of rubber gloves were seized from Petitioner at the preliminary examination when a police officer spotted them in his back pocket. Additionally, the arresting officers recovered $700 from Petitioner's shoes and $300 in his pocket, which Petitioner failed to properly justify. The passenger of the vehicle denied knowing about the cocaine. A police officer testified that Petitioner's grandmother reported that Petitioner had the car during the entire week prior to his arrest. Given this evidence, a rational trier of fact could conclude that Petitioner was in possession of the cocaine and marijuana recovered from the vehicle. Habeas relief is not warranted on this claim.

### D. *Admission of Glove Evidence Claim*

 Petitioner also claims that he is entitled to habeas relief because the trial court erred in requiring him to surrender gloves from his pocket at the preliminary examination and admitting those gloves into evidence. It is well-established, however, that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Serra v. Mich. Dep't of Corr.,* 4 F.3d 1348, 1354 (6th Cir.1993). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting the writ of habeas corpus. *Clemmons v. Sowders,* 34 F.3d 352, 356 (6th Cir.1994).

 The Michigan Court of Appeals in this case concluded that the seizure and admission of the gloves were proper under Michigan law because it was relevant to whether Petitioner possessed the cocaine found in similar gloves in the vehicle and the danger of unfair prejudice did not outweigh the probative value of the evidence. *Salters,* 2001 WL 765852 at *3. This Court agrees that the gloves were properly admitted as a matter of Michigan law and further finds that their admission did not render Petitioner's trial fundamentally unfair. Petitioner has not established that the Michigan Court of Appeals' decision is contrary to Supreme Court precedent or

that it constitutes an unreasonable application of federal law.

### E. *Jury Voir Dire Claim*

Petitioner next claims that he is entitled to habeas relief because the trial court violated the Michigan Rules of Court during jury voir dire by permitting both sides to exercise peremptory challenges before another juror was selected to replace each excused juror. Respondent contends that this claim is procedurally defaulted and constitutes a non-cognizable state law claim.

 As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright,* 433 U.S. at 85, 97 S.Ct. 2497; *see also Harris,* 489 U.S. at 263–64, 109 S.Ct. 1038. In this case, the Michigan Court of Appeals rendered the last reasoned opinion on this issue and relied upon a state procedural bar—Petitioner's failure to object to the jury selection process at trial—in dismissing his claim. *See Salters,* 2001 WL 765852 at *3. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Coleman,* 501 U.S. at 750–51, 111 S.Ct. 2546. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Id.* at 753, 111 S.Ct. 2546.

 Petitioner alleges. that trial counsel was ineffective as cause to excuse his default. Even assuming that Petitioner could establish cause, however, he cannot establish prejudice as his underlying claim lacks merit. A federal habeas corpus court may not review a state court's decision applying purely state law. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions"). Moreover, state trial courts are afforded wide discretion with respect to conducting jury voir dire. *See Mu'Min v. Virginia,* 500 U.S. 415, 424–27, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991); *Daniels v. Burke,* 83 F.3d 760, 766 (6th Cir.1996). Petitioner has neither alleged nor established how the jury selection process impeded his right to a fair trial, nor has he demonstrated that the impaneled jury was biased against him or otherwise unable to render a fair and impartial verdict. He has thus failed to establish a due process violation. Further, Petitioner has not established that a fundamental miscarriage of justice has occurred. *See Schlup,* 513 U.S. at 326–27, 115 S.Ct. 851, *see also Bousley,* 523 U.S. at 624, 118 S.Ct. 1604. His jury voir dire claim is thus barred by procedural default, is otherwise without merit, and does not warrant habeas relief.

### F. *Ineffective Assistance of Counsel Claim*

Petitioner also asserts that he is entitled to habeas relief because defense counsel was ineffective. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687, 104 S.Ct. 2052. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been

so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690, 104 S.Ct. 2052. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689, 104 S.Ct. 2052. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* In *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." The Sixth Circuit has thus concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 1311–12 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

Applying *Strickland,* the Michigan Court of Appeals concluded that Petitioner failed to establish that trial counsel was ineffective because it found no error that affected Petitioner's substantial rights. *See Salters,* 2001 WL 765852 at *3. Having reviewed the record, this Court agrees and finds that the Michigan Court of Appeals' decision is consistent with *Strickland* and constitutes a reasonable application thereof. Petitioner has not shown that counsel was deficient or, more importantly, that he was prejudiced by counsel's conduct. He is thus not entitled to habeas relief on this claim.

### G. *Cumulative Error Claim*

 Petitioner next asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial. The Michigan Court of Appeals rejected this claim because Petitioner had not established entitlement to relief on any of the alleged errors. *See Salters,* 2001 WL 765852 at *3. Given this Court's determination that Petitioner's claims lack merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error. Further, the Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir.2002). Therefore, the Michigan Court of Appeals' rejection of Petitioner's cumulative error claim, is neither contrary to, nor an unreasonable application of, Supreme Court precedent so as to warrant relief from this Court.

### H. *Sentencing/Amended Judgment Claims*

Lastly, Petitioner claims that he is entitled to habeas relief because the trial court violated the Michigan Rules of Court in imposing an enhanced second habitual offender sentence and issuing an amended judgment of sentence. The Michigan Court of Appeals rejected this claim find-

ing that the trial court announced at the sentencing hearing that it was sentencing Petitioner to an enhanced term of seven to thirty years imprisonment as a second habitual offender. The Court of Appeals also found that trial court issued an amended judgment of sentence because the enhanced sentence was recorded on the wrong part of the original judgment of sentence. *See Salters,* 2001 WL 765852 at *3. Petitioner has not rebutted these factual findings with clear and convincing evidence, nor has he demonstrated a violation of due process in his sentencing proceedings.

Further, as noted, a federal habeas corpus court may not review a state court's decision applying purely state law. *See Estelle,* 502 U.S. at 67–68, 112 S.Ct. 475. Petitioner fails to allege or establish that the Michigan Court of Appeals' decision is contrary to Supreme Court precedent or constitutes an unreasonable application thereof. Habeas relief is not warranted on this claim.

### V. *Conclusion*

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for the writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA within **TWENTY–ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."*(emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules of this Court, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**